**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TIGRAN OHANIAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED, AND REGGE LOPEZ, INDIVIDUALLY AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED,<br><br>           Plaintiffs,<br><br>v.<br><br>APPLE INC. AND T-MOBILE USA, INC.<br>           Defendants. | Case No. 1:20-cv-05162 (LGS) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO COMPEL ARBITRATION AND STAY CLAIMS**

| | |
|---|---|
| Brett D. Jaffe<br>**ALSTON & BIRD LLP**<br>90 Park Avenue<br>New York, NY 10016<br>Tel:  (212) 210-9547<br>brett.jaffe@alston.com<br><br>Nathaniel R. Lee<br>(*Pro Hac Vice*)<br>**ALSTON & BIRD LLP**<br>Chase Tower<br>2200 Ross Avenue, Suite 2300<br>Dallas, TX 75201<br>Tel:  (214) 922-3400<br>nathan.lee@alston.com | Kristine M. Brown<br>(*Pro Hac Vice*)<br>Derin B. Dickerson<br>(*Pro Hac Vice*)<br>**ALSTON & BIRD LLP**<br>1201 W Peachtree Street,<br>Suite 4900<br>Atlanta GA 30309<br>Tel:  (404) 881-7000<br>kristy.brown@alston.com<br>derin.dickerson@alston.com |

*Attorneys for Defendant*
*T-Mobile USA, Inc.*

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. FACTUAL BACKGROUND ................................................................................................ 2
    A. Plaintiffs Agreed to be Bound by T-Mobile's Terms and Conditions. ................... 2
        1. Mr. Ohanian's April 19, 2016 Account Activation. .................................... 2
        2. Plaintiff Lopez's January 16, 2017 Account Activation. ............................ 3
        3. Mr. Lopez's December 10, 2018 Account Change and Device Purchase. ..................................................................................................... 3
        4. Mr. Lopez's July 8, 2020 Lease Agreement. .............................................. 4
    B. By Accepting T-Mobile's Terms and Conditions, Plaintiffs Agreed to Individually Arbitrate Their Claims. ......................................................................... 4

III. ARGUMENT ......................................................................................................................... 7
    A. The FAA Applies and Requires Enforcement of Plaintiffs' Arbitration Agreements. ............................................................................................................... 7
    B. The Requirements to Compel Arbitration are Satisfied. ........................................ 9
        1. Plaintiffs' Written Arbitration Agreements with T-Mobile are Valid. ........................................................................................................... 10
        2. Plaintiffs' Claims Fall Within the Scope of their Arbitration Agreements. ............................................................................................... 10
    C. Stay of the Action is Appropriate Because Plaintiffs' Claims Must Be Submitted to Arbitration. ........................................................................................ 11

IV. CONCLUSION .................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*AEI Life LLC v. Lincoln Ben. Life Co.*,
   892 F.3d 126 (2d Cir. 2018) ..................................................................................................8

*Allied-Bruce Terminix Cos. v. Dobson*,
   513 U.S. 265 (1995) ..............................................................................................................7

*Am. Express Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013) ..............................................................................................................8

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ..............................................................................................................8

*Curtis, Mallet-Prevost, Colt & Mosle, LLP v. Garza-Morales*,
   308 A.D.2d 261 (N.Y. App. Div. 2003) .............................................................................8, 9

*Goldberg v. Sweet*,
   488 U.S. 252 (1989) ..............................................................................................................7

*Hartford & Indem. Co. v. Swiss Rein-Am. Corp.*,
   246 F.3d 219 (2d Cir. 2001) ................................................................................................10

*Hermès of Paris, Inc. v. Swain*,
   867 F.3d 321 (2d Cir. 2017) ..................................................................................................7

*Katz v. Cellco P'ship*,
   794 F.3d 341 (2d Cir. 2015) ................................................................................................11

*Kirby McInerney LLP v. Lee Med., Inc.*,
   No. 17-cv-4760 (KBF), 2017 U.S. Dist. LEXIS 171450 (S.D.N.Y. 2017) ........................9, 10

*Kong v. Allied Prof'l Ins. Co.*,
   750 F.3d 1295 (11th Cir. 2014) ............................................................................................8

*Maguire v. King*,
   917 So. 2d 263 (Fla. Dist. Ct. App. 2005) ............................................................................9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ..................................................................................................................9

*Preston v. Ferrer*,
   552 U.S. 346 (2008) ...........................................................................................................8, 9

**RULES**

Fed. R. Civ. P. 19 ........................................................................................................................... 8

**STATUTES**

9 U.S.C. § 2 .................................................................................................................................... 7

9 U.S.C. § 3 .................................................................................................................................... 1

9 U.S.C. § 4 .................................................................................................................................... 1

Pursuant to 9 U.S.C. §§ 3 and 4 (the Federal Arbitration Act or "FAA"), Defendant T-Mobile USA, Inc. ("T-Mobile") hereby respectfully moves this Court to enter an Order: (i) compelling individual arbitration of Plaintiffs Tigran Ohanian's and Regge Lopez's claims against T-Mobile as required by their arbitration agreements; and (ii) staying Plaintiffs' claims against T-Mobile until arbitration is complete.

## I.   INTRODUCTION

Plaintiffs attempt to assert claims in this litigation that they have contractually agreed to arbitrate rather than litigate in court. Moreover, they purport to bring these claims on behalf of a putative class, but they have also contractually agreed to waive any ability to participate in a class action. Plaintiffs' cannot simply escape their contractual obligations.

As consumers of T-Mobile services and products, Plaintiffs accepted T-Mobile's Terms and Conditions ("T&Cs") and agreed to arbitrate on an individual basis any claims or disputes in any way related to T-Mobile's services or products. Plaintiffs were notified of a simple process they could follow to opt out of the arbitration agreement and class action waiver, but they did not do so.

The scope of Plaintiffs' agreements to individually arbitrate are broad, encompassing "**ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, DEVICES OR PRODUCTS**." *See* Declaration of Christopher Muzio ("Muzio Decl."), filed concurrently herewith, ¶ 8. Plaintiffs premise all of their claims against T-Mobile on allegations regarding T-Mobile's "services, devices, or products." Plaintiffs contend that they brought this class action to "redress . . . T-Mobile's deceptive acts and practices and material omissions related to its subscriber information modules ('SIM cards'), by which it provides telecommunications services to consumers through the iPhone." (Compl. ¶ 1). Plaintiffs allege that T-Mobile "deceived

1

consumers . . . by failing to disclose that its practice of recycling phone numbers linked to SIM cards, and selling those SIM cards to consumers without requiring prior users to manually disassociate their Apple IDs from the phone numbers associated with the recycled SIM cards, did not protect the privacy of users' data and confidential personal information." (Compl. ¶ 4).

Under the FAA, this Court's role is to enforce the parties' arbitration agreements and move this dispute into arbitration as quickly as possible. Thus, this Court should grant T-Mobile's Motion to Compel Arbitration.

## II. FACTUAL BACKGROUND

### A. Plaintiffs Agreed to be Bound by T-Mobile's Terms and Conditions.

Plaintiffs Lopez (a current T-Mobile customer) and Ohanian (a former T-Mobile customer) base their claims on their dealings with T-Mobile as T-Mobile customers. *See* (Compl. ¶¶ 55-72). When activating T-Mobile service, each Plaintiff accepted T-Mobile's T&Cs. Further, throughout the life of his relationship with T-Mobile, Plaintiff Lopez repeatedly manifested his continued assent to T-Mobile's T&Cs, including the arbitration agreement, in a variety of ways (as recently as July 2020), by providing electronic signatures, using T-Mobile service after making changes to his account, and paying for service and devices.

#### 1. Mr. Ohanian's April 19, 2016 Account Activation.

On April 19, 2016, Mr. Ohanian activated a new prepaid line of service ending in 9539 and purchased a SIM Starter Kit from T-Mobile. *See* Muzio Decl. ¶ 4. At the time of activation, Mr. Ohanian received a Prepaid Service Confirmation Form (the "Ohanian Confirmation Form"). *See id.* ¶ 6. The Confirmation Form states that "By activating or using T-Mobile service, you accept T-Mobile's Terms and Conditions," and that "**T-Mobile requires Arbitration of Disputes unless you opt-out within 30-days of activation**." *See id.* ¶ 7 (emphasis in original). Mr. Ohanian used

T-Mobile's services and made a payment to T-Mobile on April 19, 2016. *See id.* ¶ 10. Thus, Plaintiff Ohanian manifested his agreement to T-Mobile's April 2016 T&Cs.

### 2. *Plaintiff Lopez's January 16, 2017 Account Activation.*

On January 16, 2017, Plaintiff Lopez activated a new prepaid line of service ending in 9539. *See id.* ¶ 11. At the time of activation, Plaintiff Lopez received a Prepaid Service Confirmation Form (the "Lopez Confirmation Form"). *See id.* ¶ 13. The Lopez Confirmation Form states that "By activating or using T-Mobile service, you accept T- Mobile's Terms and Conditions," and that "**T-Mobile requires Arbitration of Disputes unless you opt-out within 30-days of activation**." *See id.* ¶ 14 (emphasis in original). Plaintiff Lopez has been using T-Mobile's services since January 16, 2017. *See id.* ¶ 17. Thus, Plaintiff Lopez manifested his agreement to T-Mobile's September 2016 T&Cs.

### 3. *Mr. Lopez's December 10, 2018 Account Change and Device Purchase.*

On December 10, 2018, Mr. Lopez converted his account from a prepaid to a postpaid account. *See id.* ¶ 18. When making this account change, Plaintiff Lopez signed a Service Agreement (the "Service Agreement"), confirming his agreement to be bound by T-Mobile's T&Cs and to arbitrate disputes. *See id.* ¶ 19. The Service Agreement states that the "'Agreement' with T-Mobile includes: (a) this Service Agreement; (b) T-Mobile's 'Terms and Conditions'; and (c) any terms specific to your Rate plan or service." *See id.* ¶ 20. The Service Agreement contains a section titled "**Disputes**," which notes that "**T-Mobile requires ARBITRATION OF DISPUTES UNLESS YOU OPT-OUT WITHIN 30 DAYS OF ACTIVATION**." *See id.* ¶ 21 (emphasis in original).

At the same time, Mr. Lopez received a receipt from T-Mobile (the "2018 Lopez Receipt"). *Id.* ¶ 22. The 2018 Lopez Receipt includes a section entitled "**Disputes**" which outlines T-Mobile's arbitration policy. *Id.* ¶ 24. Moreover, the 2018 Lopez Receipt incorporated

3

T-Mobile's T&Cs by stating, "[i]f you activate or use T-Mobile service, or purchase a T-Mobile device, you agree to T-Mobile's Terms and Conditions." *Id.* ¶ 23. Mr. Lopez used T-Mobile service and purchased and activated a T-Mobile SIM card. *Id.* Thus, Mr. Lopez again manifested his assent to T-Mobile's T&Cs.

### 4. *Mr. Lopez's July 8, 2020 Lease Agreement.*

On July 8, 2020, Mr. Lopez again confirmed his agreement to be bound by T-Mobile's T&Cs and arbitration agreement when he leased an Apple iPhone 11. *Id.* ¶ 25. In connection with that lease, Mr. Lopez signed a JUMP! On Demand Lease Agreement (the "Lease Agreement"), which includes sections entitled "**Dispute Resolution and Arbitration**," "**Class Action Waiver**," and "**Jury Trial Waiver**." *Id.* ¶¶ 26-27 (emphasis in original). At this time, Mr. Lopez was provided with two receipts (the "2020 Lopez Receipts"). *Id.* ¶ 28. The 2020 Lopez Receipts included a section entitled "**Disputes**" that outlines T-Mobile's arbitration policy and incorporated T-Mobile's T&Cs. *Id.* ¶¶ 29-30. Thus, Mr. Lopez once again manifested his agreement to T-Mobile's T&Cs and arbitration agreement.

### B. By Accepting T-Mobile's Terms and Conditions, Plaintiffs Agreed to Individually Arbitrate Their Claims.

T-Mobile's T&Cs contain an arbitration provision that obligates both T-Mobile and its customers to resolve disputes through binding arbitration. As detailed above, T-Mobile made Plaintiffs aware of this dispute resolution provision through a variety means, including prominently displaying a notice on its receipts, service agreements, and service confirmation forms. Plaintiffs, by their signatures and conduct, clearly agreed to the T&Cs and to arbitrate any disputes arising between themselves and T-Mobile. The Confirmation Forms, Service Agreement, Lease Agreement, and the receipts all bind Plaintiffs to mandatory arbitration agreements and class action waivers in T-Mobile's T&Cs. By signing the agreements; activating, paying for, and using

their T-Mobile services; and purchasing devices from T-Mobile, Plaintiffs agreed to be bound by T-Mobile's T&Cs and to arbitrate any dispute with T-Mobile. Further, although the T&Cs provided Plaintiffs the opportunity to opt out of arbitration, they never did. *Id.* ¶¶ 6 and 19.

The first paragraph of T-Mobile's T&Cs[1] states, "Please read these Terms & Conditions ('T&Cs'), which contain important information about your relationship with T-Mobile, including mandatory arbitration of disputes between us, instead of class actions or jury trials. You will become bound by these provisions once you accept these T&Cs." *Id.* ¶ 7. The T&Cs also prominently disclose and explain the arbitration obligation as follows:

> **Dispute Resolution and Arbitration. YOU AND WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW (AND EXCEPT AS TO PUERTO RICO CUSTOMERS), ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT** . This includes any claims against other parties relating to Services or Devices provided or billed to you (such as our suppliers, dealers, authorized retailers, or third party vendors) whenever you also assert claims against us in the same proceeding. You and we each also agree that the Agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law, not state law, apply and govern the enforceability of this dispute resolution provision (despite the general choice of law provision set forth below). THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. THE ARBITRATOR MUST FOLLOW THIS AGREEMENT AND CAN AWARD THE SAME DAMAGES AND RELIEF AS A COURT (INCLUDING ATTORNEYS' FEES).
>
> Notwithstanding the above, **YOU MAY CHOOSE TO PURSUE YOUR CLAIM IN COURT AND NOT BY ARBITRATION IF YOU OPT OUT OF THESE ARBITRATION PROCEDURES <u>WITHIN 30 DAYS</u> FROM THE EARLIER OF THE DATE YOU PURCHASED A DEVICE FROM US OR THE DATE**

---

[1] This Motion quotes T-Mobile's March 17, 2016 T&Cs that were in effect in April 2016, when Mr. Ohanian activated his T-Mobile account. There is, however, no substantive difference between the dispute resolution provisions in T-Mobile's March 17, 2016 T&Cs and the September 1, 2016 T&Cs (in effect when Plaintiff Lopez activated his account) and the August 22, 2018 T&Cs (in effect when Plaintiff Lopez converted his account and purchased an iPhone 11). Muzio Decl. ¶ 33.

> **YOU ACTIVATED A NEW LINE OF SERVICE (the "Opt Out Deadline")**. You must opt out by the Opt Out Deadline for each line of Service. You may opt out of these arbitration procedures by calling 1-844-849-7497 or online at www.T-Mobiledisputeresolution.com **Any opt-out received after the Opt Out Deadline will not be valid and you must pursue your claim in arbitration or small claims court.**

*Id.* ¶ 8 (emphasis in original).

The T&Cs also contain a class action and jury trial waiver:

> **CLASS ACTION WAIVER . YOU AND WE EACH AGREE THAT ANY PROCEEDINGS, WHETHER IN ARBITRATION OR COURT, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS OR REPRESENTATIVE ACTION OR AS A MEMBER IN A CLASS, CONSOLIDATED OR REPRESENTATIVE ACTION . If a court or arbitrator determines in an action between you and us that this Class Action Waiver is unenforceable, the arbitration agreement will be void as to you. If you choose to pursue your claim in court by opting out of the arbitration provision as specified above, this Class Action Waiver provision will not apply to you. Neither you, nor any other customer, can be a class representative, class member, or otherwise participate in a class, consolidated, or representative proceeding without having complied with the opt out requirements above.**
>
> **JURY TRIAL WAIVER** . If a claim proceeds in court rather than through arbitration, **YOU AND WE EACH WAIVE ANY RIGHT TO A JURY TRIAL**.

*Id.* (emphasis in original).

When a T-Mobile customer purchases or leases a new device, T-Mobile provides a receipt that includes a prominent notice of the arbitration obligations. Indeed, when Mr. Lopez leased an iPhone 11 on July 8, 2020, he received receipts that alerted him to the arbitration agreement. *Id.* ¶ 28. The receipts expressly provided that "T-Mobile REQUIRES ARBITRATION OF DISPUTES unless . . . YOU PREVIOUSLY OPTED OUT PURSUANT TO T-MOBILE'S TERMS AND CONDITIONS." *Id.* Similarly, when Mr. Ohanian activated his T-Mobile services on April 19, 2016, he received the Confirmation Form, which explicitly stated, "**T-Mobile requires Arbitration of Disputes unless you opt-out within 30-days of activation**." *Id.* ¶ 7

6

(emphasis in original). Accordingly, Plaintiffs accepted the T&Cs and its arbitration agreement with clear notice of their existence.

## III. ARGUMENT

### A. The FAA Applies and Requires Enforcement of Plaintiffs' Arbitration Agreements.

The FAA preempts state law and requires enforcement of arbitration agreements by providing that agreements to arbitrate "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA applies to any written arbitration agreement contained in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. The Supreme Court has expansively construed the phrase "involving commerce" as extending the FAA's reach to the full limit of Congress' Commerce Clause power. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 268 (1995). Here, the FAA applies because the transactions between Plaintiffs and T-Mobile involve interstate commerce. Indeed, the T&Cs expressly provide that they "affect[] interstate commerce so that the Federal Arbitration Act and federal arbitration law apply." (Muzio Decl. ¶ 8). This is consistent with the nature of Plaintiffs' contracts with T-Mobile, which relate to the provision of wireless service to Plaintiffs across state lines, further making clear that the agreements affect interstate commerce. *See generally Goldberg v. Sweet*, 488 U.S. 252, 254-55 (1989) (telecommunications industry constitutes interstate commerce).

Moreover, the FAA applies because the contracts between T-Mobile and Plaintiffs are contracts between citizens of different states. T-Mobile is a Delaware corporation with its principal place of business in Washington. (Muzio Decl. ¶ 2). Plaintiffs allege that they are residents of Russia and Florida. *See* Compl. ¶¶ 8-9. Contracts between citizens of different states affect commerce, rendering the FAA applicable. *See Hermès of Paris, Inc. v. Swain*, 867 F.3d 321, 324 (2d Cir. 2017) ("[I]n evaluating whether the requirement of complete diversity is

7

satisfied, a court assessing its jurisdiction over an FAA petition is to 'look only to the citizenship of the parties in the action before it' - that is the 'parties to the petition to compel' as well as any indispensable parties who must be joined pursuant to Federal Rule of Civil Procedure 19." (alterations and quotation omitted)); *Kong v. Allied Prof'l Ins. Co.*, 750 F.3d 1295, 1303 (11th Cir. 2014) (finding arbitration provision governed by FAA because Allied is an Arizona corporation and insured was a Florida citizen).

Even if there is any doubt that the agreements are enforceable (which there is not), the Court should interpret any ambiguity in favor of enforcement. "The principal purpose of the FAA is to ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (internal quotation marks omitted). The FAA both "embod[ies]" and declares a "national policy favoring arbitration." *Id.* at 346; *Preston v. Ferrer*, 552 U.S. 346, 353 (2008). The Supreme Court has interpreted the FAA as reflecting both "a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *Concepcion*, 563 U.S. at 333 (internal quotation marks omitted). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id.* at 339.

The Supreme Court has consistently recognized this strong public policy in favor of arbitration. *See, e.g. Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232-33 (2013); *Concepcion*, 563 U.S. at 339. New York and Florida law are in accord.[2] *See Curtis, Mallet-*

---

[2] The T&Cs contain a choice of law provision designating the laws of the state of the customer's T-Mobile billing address. Mr. Lopez's billing address was in Florida. Accordingly, the laws of Florida apply to the enforceability of Mr. Lopez's agreements with T-Mobile. As a prepaid customer, T-Mobile did not maintain a billing address for Mr. Ohanian. "New York looks to the center of gravity of a contract to determine choice of law." *AEI Life LLC v. Lincoln Ben. Life Co.*, 892 F.3d 126, 135 (2d Cir. 2018) (internal quotation marks and quotation

8

*Prevost, Colt & Mosle, LLP v. Garza-Morales*, 308 A.D.2d 261, 269 (N.Y. App. Div. 2003) ("The Court of Appeals has recently held New York's policy in favor of arbitration to be so strong that it overrides all but a very few other public policies of the State itself."); *Maguire v. King*, 917 So. 2d 263, 266 (Fla. Dist. Ct. App. 2005), *approved sub nom. Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587 (Fla. 2013) ("Florida public policy favors resolving disputes through arbitration when the parties have agreed to arbitrate."). To further the FAA's purposes, the Supreme Court has emphasized that courts should interpret arbitration clauses liberally in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). The Supreme Court has instructed that courts should "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Preston*, 552 U.S. at 357. "A prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results.'" *Concepcion*, 563 U.S. at 346.

Therefore, the FAA requires enforcement of the arbitration agreements.

**B.  The Requirements to Compel Arbitration are Satisfied.**

"Once the threshold question of the FAA's applicability has been answered, the moving party must show that (1) there is a valid agreement between the parties to arbitrate disputes, and (2) the instant dispute falls within the scope of the arbitration agreement." *Kirby McInerney LLP v. Lee Med., Inc.*, No. 17-cv-4760, 2017 U.S. Dist. LEXIS 171450, at *16 (S.D.N.Y. 2017) (citing

---

omitted). "Under this approach, courts may consider a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties" with "the place of contracting and place of performance . . . given the greatest weight." *Id.* (alterations and quotation omitted). Here, Mr. Ohanian entered into his contract with T-Mobile in New York and apparently used his T-Mobile service in New York. (Compl. ¶ 55). Thus, New York law applies to the enforceability of Mr. Ohanian's agreement with T-Mobile.

9

*Hartford & Indem. Co. v. Swiss Rein-Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001)).  Both elements are easily satisfied.

### 1. *Plaintiffs' Written Arbitration Agreements with T-Mobile are Valid.*

As described above, each Plaintiff entered valid written agreements with T-Mobile that contained binding arbitration provisions.  *See* Section II, *supra*.  Mr. Ohanian accepted the arbitration agreement in the T&Cs when he activated, used, and paid for T-Mobile services on April 19, 2016.  (Muzio Decl. ¶ 10).  Mr. Lopez similarly accepted the arbitration agreement in the T&Cs when he activated his account in January 2017 and again when he converted his prepaid account to a postpaid account in December 2018 and when he purchased a new device from T-Mobile on July 8, 2020. (Muzio Decl. ¶ 17).

### 2. *Plaintiffs' Claims Fall Within the Scope of their Arbitration Agreements.*

Here, there can be no question that Plaintiffs' claims fall within the scope of their agreements to arbitrate.  The arbitration agreement included in the T&Cs broadly applies to "**ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, DEVICES OR PRODUCTS.**" (Muzio Decl. ¶ 8) (emphasis in original).  Plaintiffs' claims fall directly within the scope of the arbitration agreements because they relate to or concern T-Mobile's privacy policy, services, equipment, devices, and products.  Plaintiffs contend that they brought this class action to "redress . . . T-Mobile's deceptive acts and practices and material omissions related to its subscriber information modules ('SIM cards'), by which it provides telecommunications services to consumers through the iPhone." (Compl. ¶ 1).  Plaintiffs allege that T-Mobile "deceived consumers . . . by failing to disclose that its practice of recycling phone numbers linked to SIM cards, and selling those SIM cards to consumers without requiring prior users to manually

disassociate their Apple IDs from the phone numbers associated with the recycled SIM cards, did not protect the privacy of users' data and confidential personal information." (Compl. ¶ 4). Thus, Plaintiffs' claims clearly fall within the scope of the arbitration agreements as they relate to T-Mobile's services, devices, and products.

### C. Stay of the Action is Appropriate Because Plaintiffs' Claims Must Be Submitted to Arbitration.

When, as here, a plaintiff asserts claims within the scope of an enforceable arbitration agreement, the court must stay the lawsuit and compel arbitration. *See Katz v. Cellco P'ship*, 794 F.3d 341, 345-46 (2d Cir. 2015). The FAA's "plain language specifies that the court 'shall' stay proceedings pending arbitration, provided an application is made and certain conditions are met," and "[n]owhere does the FAA abrogate this directive or render it discretionary." *Katz*, 794 F.3d at 345-46. Because all of Plaintiffs' claims against T-Mobile are arbitrable, the FAA requires that this case be stayed with respect to those claims.

## IV. CONCLUSION

For all the reasons stated herein, Plaintiffs are contractually required to individually arbitrate rather than litigate their claims. Accordingly, T-Mobile respectfully requests that this Court grant its Motion to Compel Arbitration and stay this case in favor of arbitration.

Dated: September 3, 2020                              Respectfully submitted,

/s/ Brett D. Jaffe
Brett D. Jaffe
**ALSTON & BIRD LLP**
90 Park Avenue
New York, New York 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
Email: brett.jaffe@alston.com

Kristine M. Brown (*Pro Hac Vice*)
Derin B. Dickerson (*Pro Hac Vice*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 W Peachtree Street, Suite 4900
Atlanta GA 30309
(404) 881-7000 – Telephone
(404) 881-7777 – Facsimile
kristy.brown@alston.com
derin.dickerson@alston.com

Nathaniel R. Lee (*Pro Hac Vice*)
**ALSTON & BIRD LLP**
Chase Tower
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
(214) 922-3400 – Telephone
(214) 922-3899 – Facsimile
nathan.lee@alston.com

**ATTORNEYS FOR DEFENDANT T-MOBILE USA, INC.**

**CERTIFICATE OF SERVICE**

I certify that on September 3, 2020, I caused to be served a copy of the foregoing Memorandum of Law in Support of Motion to Compel Arbitration and Stay Claims, and the documents referenced therein, via the Court's ECF system on all counsel of record registered through that system to receive electronic filings in this case.

Respectfully submitted,

*/s/ Brett D. Jaffe*

Brett D. Jaffe
**ALSTON & BIRD LLP**
90 Park Avenue
New York, New York 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
Email: brett.jaffe@alston.com