UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

TIGRAN   OHANIAN,   INDIVIDUALLY   AND   ON
BEHALF   OF   ALL   OTHER   PERSONS   SIMILARLY
SITUATED,   AND   REGGE   LOPEZ,   INDIVIDUALLY           CASE NO.: 20-cv-05162 (LGS)
AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY
SITUATED,

                                        *Plaintiffs*,

                - against -

APPLE INC. AND T-MOBILE USA, INC.

                                        *Defendants.*

------------------------------------------------------------------X


### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT APPLE INC.'S MOTION TO COMPEL ARBITRATION


OVED & OVED LLP
*Attorneys for Plaintiffs*
401 Greenwich Street
New York, NY 10013
Tel.: 212.226.2376

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ...................................................................................................... 3

    A.  Allegations on the Complaint .......................................................................... 3

    B.  The Purported Arbitration Provision ............................................................... 5

LEGAL STANDARD ................................................................................................................ 7

ARGUMENT ........................................................................................................................... 8

    I.      APPLE CANNOT COMPEL ARBITRATION WITH OHANIAN ................................. 8

        A.  The Lack of a Valid Agreement to Arbitrate Between
            Ohanian and T-Mobile Mandates Denial of Apple's Motion ......................... 8

        B.  Even if a Valid Agreement to Arbitrate Exists Between
            Ohanian and T-Mobile, Apple Cannot Compel Arbitration
            Under an Equitable Estoppel Theory ............................................................ 10

            1.  Ohanian Is Not Relying on the Terms of an
                "Agreement" with T-Mobile in Pursuing His Claims Against Apple ..... 11

            2.  Apple Has Not Made the Requisite
                Showing of a Close Relationship with T-Mobile .................................... 14

    II.    APPLE CANNOT COMPEL ARBITRATION WITH LOPEZ ............................................ 17

        A.  Apple Cannot Compel Arbitration Because
            Lopez's Claims Against Apple Do Not Fall
            Within the Scope of His Agreement with T-Mobile .................................... 18

        B.  Apple Cannot Compel Arbitration Under an Equitable Estoppel Theory .... 18

            1.  Lopez Is Not Relying on the Terms of Any Written
                Agreement with T-Mobile to Assert His Claims Against Apple ............. 19

            2.  Lopez Makes No Allegations of Concerted
                Misconduct by Apple and T-Mobile ...................................................... 21

CONCLUSION ........................................................................................................................ 22

Table of Authorities

**<u>Cases</u>**

<u>**Page(s)**</u>

*Arellano v. T-Mobile USA, Inc.*,
   No. C 10-05663, 2011 U.S. Dist. LEXIS 41667
   (N.D. Cal. Apr. 11, 2011) ...................................................................................9, 16

*Armas v. Prudential Sec., Inc.*,
   842 So. 2d 210 (Fla. Dist. Ct. App. 2003) .............................................................21

*Allscripts Healthcare Sols., Inc. v. Pain Clinic of Northwest Fla, Inc.*,
   158 So. 3d 644 (Fla. Dist. Ct. App. 2014) .............................................................19

*Bah Sales Assoc., LLC v. Byers*,
   701 F.3d 1335 (11th Cir. 2012) ....................................................................... 19-20

*Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   467 Fed. App'x 4 (2d. Cir. 2012).............................................................................9

*Cap Gemini Ernst & Young, U.S., LLC v. Nackel*,
   346 F.3d 360 (2d. Cir. 2003)....................................................................................7

*City of Almaty v. Sater*,
   No. 19-CV-2645, 2019 U.S. Dist. LEXIS 211235
   (S.D.N.Y. Dec. 6, 2019).....................................................................................7, 10

*Denney v. Jenkins & Gilchrist*,
   412 F. Supp. 2d 293 (S.D.N.Y. 2005)...........................................................8, 10, 11

*Different Drummer LLC v. Nat'l Urban League, Inc.*,
   No. 11 Civ. 4982, 2012 U.S. Dist. LEXIS 16494
   (S.D.N.Y. Feb. 7, 2012) .................................................................................11, 12, 13

*Escobal v. Celebration Cruise Operator, Inc.*,
   482 Fed. App'x 475 (11th Cir 2012) ......................................................................21

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
   387 F.3d 163 (2d Cir. 2004)................................................................................9, 11

*Kaplan Indus v. Oaktree Capital Mgmt., LP*,
   No. 11-cv-22064, 2011 U.S. Dist. LEXIS 135670
   (S.D. Fl. Aug. 18, 2011).........................................................................................21

*Koechli v. BIP Int'l, Inc.*,
   870 So. 2d 940 (Fla. Dist. Ct. App. 2004) .............................................................19

*Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*,
   845 F.3d 1351 (11th Cir. 2017) ........................................................................18

*Lismore v. Societe Generale Energy Corp.*,
   No. 11 Civ. 6705, 2012 U.S. Dist. LEXIS 118157
   (S.D.N.Y. Aug. 17, 2012) ........................................................................ 16-17

*MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp., LLC*,
   268 F.3d 58 (2d Cir. 2001)........................................................................12

*Medidata Sols., Inc. v. Veeva Sys.*,
   748 Fed. App'x 363 (2d Cir. 2018)........................................................................10

*Meyer v. T-Mobile USA, Inc.*,
   836 F. Supp. 2d 994 (N.D. Cal. 2011) ........................................................................9

*Mohammad v. T-Mobile USA, Inc.*,
   No. 2:18-cv-00405, 2018 U.S. Dist. LEXIS 202678
   (E.D. Cal. Nov. 29, 2018) ........................................................................9

*Moore v. T-Mobile USA, Inc.*,
   No. 10-CV-527, 2012 U.S. Dist. LEXIS 203946
   (E.D.N.Y. Sept. 28, 2012)........................................................................9

*Norcast, S.ar.l. v. Castle Harlan, Inc.*,
   No. 12 Civ. 4973, 2014 U.S. Dist. LEXIS 1197
   (S.D.N.Y. Jan. 6, 2014)........................................................................7, 11, 12, 13

*Oxbow Calcining USA Inc. v. Am. Indus. Partners*,
   96 A.D.3d 646 (1st Dep't 2012) ........................................................................12

*Laumann v. NHL*,
   989 F. Supp. 2d 329 (S.D.N.Y. 2013)........................................................................7

*Mims v. Global Credit & Collection Corp.*,
   803 F. Supp. 2d 1349 (S.D. Fl. 2011) ........................................................................20

*Moss v. BMO Harris Bank, N.A.*,
   24 F. Supp. 3d 281 (E.D.N.Y. 2014) ........................................................................13

*Opals on Ice Lingerie v. Body Lines Inc.*,
   320 F.3d 362 (2d Cir 2003)........................................................................7

*Prima Paint Corp. v. Flood & Conklin Mgf. Co.*,
   388 U.S. 395 (1967)........................................................................7

*Ragone v. Atl Video at Manhattan Ctr.*,
    No. 07 Civ. 6084, 2008 U.S. Dist. LEXIS 66369
    (S.D.N.Y. Aug. 27, 2008) ...........................................................................................13

*Ragone v. Atl. Video at Manhattan Ctr.*,
    595 F.3d 115 (2d Cir. 2010)......................................................................................10

*Republic of Iraq v. ABB AG*,
    769 F. Supp. 2d 605 (S.D.N.Y. 2011)..........................................................14, 15, 16

*Rolls-Royce PLC v. Royal Caribbean Cruises, Ltd.*,
    960 So. 2d 768 (Fla. Dist. Ct. App. 2007) ................................................................20

*Ross v. Am. Express Co.*,
    547 F.3d 137 (2d Cir. 2008).................................................................................7, 14

*Schreiber v. Ally Fin., Inc.*,
    634 Fed. App'x 263 (11th Cir. 2015) ........................................................................20

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
    542 F.3d 354 (2d Cir. 2008)......................................................................................14

*Thomson-CSF, S.A. v. American Arbitration Ass'n*,
    64 F.3d 773 (2d. Cir. 1995).........................................................................................7

*United States v. L - 3 Communs. EOTech, Inc.*,
    921 F.3d 11 (2d Cir. 2019).........................................................................................18

*Whaley v. T-Mobile USA, Inc.*,
    No. 13-31, 2013 U.S. Dist. LEXIS 130245
    (E.D. Ky. Sept. 12, 2013).............................................................................................9

## Statutes and Codes

New York General Business Law § 349.............................................................4, 12, 20

New York General Business Law § 350.............................................................4, 12, 20

Plaintiffs Tigran Ohanian ("Ohanian") and Regge Lopez ("Lopez") (collectively, "Plaintiffs") respectfully submit this memorandum of law in opposition to the motion filed by Defendant Apple Inc. ("Apple") seeking to compel arbitration and stay the case[1] (the "Apple Motion").[2]

## PRELIMINARY STATEMENT

Apple's Motion to compel arbitration does not rely on its own agreement with Ohanian or with Lopez. In fact, Apple does not contend anywhere in the Mov. Br. that it ever entered into any agreement with Ohanian or with Lopez containing any arbitration provision. Instead, Apple relies *solely* on an arbitration provision contained in purported "agreements" with Ohanian and Lopez embodied in *T-Mobile's* Terms and Conditions *that does not once even mention Apple* to advance conclusory assertions that it can compel arbitration with them.

Specifically, Apple contends that even though it is not even mentioned in T-Mobile's Terms and Conditions, it still can use its status as a non-signatory to Ohanian and Lopez's purported "agreements" with T-Mobile to force their claims in this putative consumer class action into arbitration under the doctrine of equitable estoppel. Yet, a thorough review of well-settled state law in both New York (as to Ohanian) and Florida (as to Lopez) concerning the doctrine of equitable estoppel reveals that Apple's position is wholly devoid of merit. Ohanian and Lopez thoroughly dismantle Apple's equitable estoppel arguments on all grounds in the instant opposition brief, mandating denial of the Apple Motion.

---

[1] Apple's request to stay this action is moot because on September 11, 2020, this Court entered an Order staying all parties' discovery and disclosure obligations. ECF Dkt. No. 41.

[2] References to the "Moving Brief" or "Mov. Br." throughout this memorandum of law refer to the Memorandum of Law in Support of the Apple Motion, ECF Dkt. No. 34.

As discussed in Point I, *infra*, the lack of any valid underlying "agreement" to arbitrate between T-Mobile and Ohanian – the alleged signatories – mandates denial of any attempt by Apple – a non-party and non-signatory to that purported "agreement" – to compel arbitration with Ohanian based on equitable estoppel.  Indeed, even if this Court somehow finds that Ohanian entered into a binding agreement to arbitrate with T-Mobile, Apple *still cannot* compel arbitration under an equitable estoppel theory, because it has failed to demonstrate *either* prong of the requisite test under New York law, <u>both of which</u> are required for a non-signatory to invoke the protection of the doctrine.  Namely, (i) Ohanian's claims for wrongdoing asserted against Apple are in no way based on the T-Mobile Terms and Conditions; and (ii) any alleged relationship or connection between Apple and T-Mobile is not the type of "close relationship" that can support the application of equitable estoppel under existing case law.

As discussed in Point II, *infra*, Apple's attempt to compel arbitration with Lopez based on equitable estoppel fares no better.  Given that Lopez has voluntarily dismissed T-Mobile from this action pursuant to Fed. R. Civ. P. 41(a), Lopez's claims against Apple in the complaint no longer fall with the scope of the arbitration provision in T-Mobile's Terms and Conditions, which forecloses any attempt by Apple to compel arbitration with him.  Moreover, and notwithstanding the fact that the Apple Motion fails as to Lopez on that basis, Apple cannot possibly compel arbitration with Lopez based on equitable estoppel under Florida law, because (i) Lopez is not relying on the terms of any "agreement" with T-Mobile (or, for that matter, the T-Mobile Terms and Conditions) in asserting his claims against Apple; and (ii) Lopez is not – and never was – advancing allegations of concerted misconduct by Apple and T-Mobile in the complaint.

## FACTUAL BACKGROUND[3]

### A.      Allegations in the Complaint

The complaint in this putative consumer class action (the "Complaint" or "Compl.") seeks to redress deceptive acts and practices and material omissions by (i) Apple regarding the data privacy and security features of its mobile devices, namely the iPhone and iMessage and FaceTime features of the iPhone; and (ii) T-Mobile relating to its subscriber identification modules ("SIM cards") by which it provides telecommunications services to consumers through the iPhone.  Compl. ¶ 1.

From the time Apple first introduced FaceTime and iMessage on the iPhone, a significant security flaw existed in the iOS software, allowing iMessage correspondence and FaceTime calls to be improperly accessed by third parties.  *Id*. ¶ 39.  Specifically, when an iPhone user ceased using a SIM card and the phone number associated with that SIM card was recycled by a wireless network carrier, such as T-Mobile, the previous owner of the SIM card associated with the phone number would still receive iMessages and FaceTime calls on his or her iPhone that were intended to be received by the new owner of the phone number.  *Id* ¶ 40.

The only method by which the unintended, improper disclosure of iPhone users' iMessage correspondence and FaceTime calls could be prevented during the time period in question was the forced disassociation of an Apple ID by the previous owners of the phone numbers associated with the recycled SIM cards, which neither Apple nor T-Mobile ever voluntarily disclosed to consumers.  *Id*. ¶ 44.  Rather, Apple knowingly allowed multiple unrelated Apple IDs of consumers that had purchased iPhones to coexist and to be associated

---

[3] Plaintiffs also incorporate by reference Ohanian's Memorandum of Law in Opposition to T-Mobile's Motion to Compel Arbitration (ECF Dkt. No. 45), including the Declaration of Ohanian submitted in connection therewith (ECF Dkt. No. 46).

with the same phone number.  *Id*. ¶ 45.  T-Mobile compounded the problem by engaging in deceptive SIM card practices, namely selling SIM cards with recycled phone numbers to consumers without requiring prior users to manually disassociate their Apple IDs from the phone numbers associated with those SIM cards.  *Id*. ¶¶ 4, 45.

Plaintiffs are residents of Russia (Ohanian) and the State of Florida (Lopez).  *Id*. ¶¶ 8-9. Both Plaintiffs purchased iPhones and T-Mobile SIM cards for use in their iPhones during the Class Period, and became victims of Defendants' wrongful conduct.  *Id*. ¶¶ 54, 55, 59, 61, 74. Specifically, once Ohanian ceased utilizing the phone number that T-Mobile had provided to him through the SIM card, T-Mobile recycled the number from that SIM card, and sold a SIM card to Lopez with that same phone number.  *Id*. ¶ 71.  As a result, iMessage correspondence and FaceTime calls intended for, and directed to, Lopez were instead received by Ohanian on his iPhone.  *Id*. ¶ 72.  This led to Ohanian receiving content on his iPhone – including private photographs – which appeared to be coming from a woman who was not his wife.  *Id*. ¶ 75.  It also led to Lopez not receiving those pictures, which included pictures of his child that he can no longer obtain.  *Id*. ¶ 76.

Based on the foregoing, Plaintiffs, individually and on behalf of a putative class of consumers, are pursuing claims against Apple alleging violations of New York General Business Law ("N.Y. GBL") §§ 349 and 350, fraudulent misrepresentation, and unjust enrichment. Compl., ¶¶ 83-122.  In sum, Plaintiffs allege that Apple engaged in false, deceptive, and materially misleading consumer-oriented conduct concerning security and privacy features of the iPhone, and that Plaintiffs and members of the putative class were injured as a result thereof.  *Id*.

Ohanian also is pursuing claims against T-Mobile alleging violations of N.Y. GBL §§ 349 and 350, fraudulent misrepresentation, and unjust enrichment individually and on behalf of a

putative class of consumers.[4]  *Id*. ¶¶ 123-163.  Ohanian alleges that T-Mobile engaged in its own false, deceptive, and materially misleading consumer-oriented conduct concerning its SIM cards. *Id*.  Specifically, the claims asserted against T-Mobile arise from its failure to inform consumers of the fact that its practice of recycling phone numbers linked to SIM cards – and selling those SIM cards to consumers for use in the iPhone without requiring prior users to manually disassociate their Apple IDs from the phone numbers associated with those SIM cards – did not protect the privacy of consumers' data and confidential information while using the iPhone.  *Id*.

**B.  The Purported Arbitration Provision**

In its attempt to compel arbitration with both Ohanian and Lopez, Apple relies on a dispute resolution provision (the "Arbitration Provision") contained in T-Mobile's Terms and Conditions (the "T&Cs").  Mov. Br., p. 7.  The Arbitration Provision states the following, in full:

---

[4] Lopez has dismissed his claims against T-Mobile in this action.  ECF Dkt. No. 44.

# Dispute Resolution

**\*HOW DO I RESOLVE DISPUTES WITH T-MOBILE?**

**Dispute Resolution and Arbitration. YOU AND WE EACH AGREE THAT,
EXCEPT AS PROVIDED BELOW (AND EXCEPT AS TO PUERTO RICO
CUSTOMERS), ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED
TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR
SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES,
WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS
COURT** . This includes any claims against other parties relating to Services or
Devices provided or billed to you (such as our suppliers, dealers, authorized
retailers, or third party vendors) whenever you also assert claims against us in
the same proceeding. You and we each also agree that the Agreement affects
interstate commerce so that the Federal Arbitration Act and federal arbitration
law, not state law, apply and govern the enforceability of this dispute resolution
provision (despite the general choice of law provision set forth below). THERE
IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN
ARBITRATION AWARD IS LIMITED. THE ARBITRATOR MUST FOLLOW THIS
AGREEMENT AND CAN AWARD THE SAME DAMAGES AND RELIEF AS A
COURT (INCLUDING ATTORNEYS' FEES).

Declaration of Christopher Muzio in Support of T-Mobile's Motion to Compel Arbitration and
Stay Claims (the "T-Mobile Motion"), dated September 3, 2020 ("Muzio Dec."), Ex. I, p. 6; Ex.
J, pp. 6-7; Ex. K., pp. 6-7 (empasis in original).[5]

Pertinent here is the unbolded portion of the Arbitration Provision, which provides that
the purported agreement to arbitrate claims or disputes with T-Mobile related to T-Mobile
services, devices, or products "includes claims against other parties . . . (such as our suppliers,

---

[5] The Muzio Dec. appends several versions of the T-Mobile T&Cs that T-Mobile claims were in effect at different
periods of time: (i) the "April 2016 T&Cs" (Ex. I); (ii) the "September 2016 T&Cs" (Ex. J); and (iii) the "August
2018 T&Cs" (Ex. K).  Muzio Dec., ¶ 32.  The Arbitration Provision is identical in each of these different versions of
the T&Cs.  T-Mobile contends that the April 2016 T&Cs are applicable to Ohanian, and that the September 2016
T&Cs and August 2018 T&Cs are applicable to Lopez.  Muzio Dec., ¶ 32.

dealers, authorized retailers, or third party vendors) <u>whenever you also assert claims against us in the same proceeding</u>."  Muzio Dec., Ex. I, p. 6; Ex. J, pp. 6-7; Ex. K., pp. 6-7 (emphasis added).

## **LEGAL STANDARD**

It is fundamental that "arbitration is a matter of consent, not coercion."  *Ross v. Am. Express Co.*, 547 F.3d 137, 143 (2d Cir. 2008).  While the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting the FAA "was to make arbitration agreements as enforceable as other contracts, but not more so."  *Cap Gemini Ernst & Young, U.S., LLC v. Nackel*, 346 F.3d 360, 364 (2d. Cir. 2003) (citing *Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362, 369 (2d Cir 2003) (quoting *Prima Paint Corp. v. Flood & Conklin Mgf. Co.*, 388 U.S. 395, 404 n.12 (1967)).

Courts should not "override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated."  *Norcast, S.ar.l. v. Castle Harlan, Inc.*, No. 12 Civ. 4973, 2014 U.S. Dist. LEXIS 1197, at *12 (S.D.N.Y. Jan. 6, 2014) (citation omitted).  "The parties' intentions and expectations govern which issues they have agreed to arbitrate, as well as *with whom* they have agreed to arbitrate."  *Laumann v. NHL*, 989 F. Supp. 2d 329, 335 (S.D.N.Y. 2013) (citation omitted) (emphasis in original).  A court should not construe an arbitration agreement so broadly as to encompass claims and parties that were not intended by the original contract.  *City of Almaty v. Sater*, No. 19-CV-2645, 2019 U.S. Dist. LEXIS 211235, at *23 (S.D.N.Y. Dec. 6, 2019) (citing *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776 (2d. Cir. 1995)).

When determining whether a litigant who is not a party to an arbitration agreement can enforce the agreement, the court evaluates whether relevant state contract law allows the non-signatory to do so.  *City of Almaty*, 2019 U.S. Dist. LEXIS 211235, at *24.  Exceptional

circumstances must apply before a court will allow a non-contracting party to impose a contractual agreement to arbitrate. *Denney v. Jenkins & Gilchrist*, 412 F. Supp. 2d 293, 297 (S.D.N.Y. 2005) (citations omitted).

# ARGUMENT

## I.

## APPLE CANNOT COMPEL ARBITRATION WITH OHANIAN

Apple's attempt to compel arbitration with Ohanian – which is based on nothing other than the doctrine of equitable estoppel under New York law – is fatally flawed and must be rejected for numerous reasons. First, the lack of a valid arbitration agreement between Ohanian and T-Mobile forecloses any attempt by *Apple* – a non-party and non-signatory to that purported "agreement" – to compel arbitration with Ohanian under a theory of equitable estoppel.[6] Moreover, even if this Court somehow finds that a valid agreement to arbitrate exists between Ohanian and T-Mobile, Apple still cannot compel arbitration under an equitable estoppel theory.

**A.      The Lack of a Valid Agreement to Arbitrate Between Ohanian and T-Mobile Mandates Denial of Apple's Motion**

The briefs make clear that Apple is assuming that this Court will resolve the T-Mobile Motion by finding that an "agreement" to arbitrate exists between T-Mobile and Ohanian. Mov. Br., p. 7. Apple uses what it apparently deems to be a foregone conclusion in that regard as the basis for *its own* attempt to enforce the Arbitration Provision against Ohanian under a theory of

---

[6] In his opposition to the T-Mobile Motion, Ohanian contends that T-Mobile has failed to meet its burden of establishing that a binding agreement to arbitrate was formed between the parties, mandating denial of the T-Mobile Motion. ECF Dkt. No. 45.

equitable estoppel.[7]  Mov. Br., pp. 7, 10-12.  <u>Yet, to bind a party to arbitrate under an estoppel</u> <u>theory, the court must first find that there was a valid agreement to arbitrate between two parties.</u> *Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 467 Fed. App'x 4, 13 (2d. Cir. 2012) (summary order) (emphasis added) (citing *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004)).  Hence, in *Bonnant*, the Second Circuit reversed the district court's determination that the plaintiff was required to arbitrate with a non-signatory based on equitable estoppel for that very reason.  467 Fed. App'x at 13.

As forth in Ohanian's opposition to the T-Mobile Motion, no binding agreement to arbitrate exists between Ohanian and T-Mobile.[8]  Accordingly, because no "agreement" to arbitrate even exists between Ohanian and T-Mobile in the first instance, this Court cannot consider whether Apple – a non-party and non-signatory to that purported "agreement" – can rely on a theory of equitable estoppel to attempt to compel arbitration with Ohanian under the Arbitration Provision.  Apple's Motion must be denied on that basis.

---

[7] Apple even tries to pressure this Court to compel arbitration based on the fact that "multiple courts" have enforced the "agreement" set forth in the T-Mobile T&Cs.  Mov. Br., p. 7.  Yet, Apple fails to advise this Court of the fact that none of those cases cited in the Mov. Br. involved the specific issue of whether a non-signatory to the T-Mobile "agreement" could compel arbitration based on a theory of equitable estoppel.  *See, e.g., Moore v. T-Mobile USA, Inc.*, No. 10-CV-527, 2012 U.S. Dist. LEXIS 203946 (E.D.N.Y. Sept. 28, 2012) (case did not involve any issue of whether a non-signatory to the T-Mobile T&Cs could compel arbitration with the plaintiff); *Meyer v. T-Mobile USA, Inc.*, 836 F. Supp. 2d 994 (N.D. Cal. 2011) (same); *Arellano v. T-Mobile USA, Inc.*, No. C 10-05663, 2011 U.S. Dist. LEXIS 41667 (N.D. Cal. Apr. 11, 2011) (same); *Mohammad v. T-Mobile USA, Inc.*, No. 2:18-cv-00405, 2018 U.S. Dist. LEXIS 202678 (E.D. Cal. Nov. 29, 2018) (same); *Whaley v. T-Mobile USA, Inc.*, No. 13-31, 2013 U.S. Dist. LEXIS 130245 (E.D. Ky. Sept. 12, 2013) (same).

[8] In the interest of brevity, Ohanian respectfully refers this Court to Ohanian's Memorandum of Law in Opposition to the T-Mobile Motion, which explains in detail why no binding arbitration agreement exists between Ohanian and T-Mobile.  *See* ECF Dkt. No. 45.

**B.**      **Even if a Valid Agreement to Arbitrate Exists Between Ohanian and T-Mobile, Apple Cannot Compel Arbitration Under an Equitable Estoppel Theory**

Even if this Court somehow finds that Ohanian entered into a binding agreement to arbitrate with T-Mobile, Apple *still* cannot compel arbitration with Ohanian under an equitable estoppel theory.[9]

The purpose of the doctrine of equitable estoppel is to prevent a plaintiff from, in effect, trying to have his cake and eat it too; that is, from relying on the contract when it works to his advantage by establishing the claim, and repudiating it when it works to his disadvantage by requiring arbitration. *Denney*, 412 F. Supp. 2d at 298. Under well-settled law, a non-signatory to an arbitration agreement may enforce that agreement under the principle of equitable estoppel where (1) "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed;" and (2) there is "a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute" with the non-signatory. *Medidata Sols., Inc. v. Veeva Sys.*, 748 Fed. App'x 363, 366 (2d Cir. 2018) (summary order) (affirming this Court's denial of a motion to compel arbitration in which the defendant attempted to invoke the principles of equitable estoppel) (citing *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010)).

Here, Apple has failed to demonstrate *either* prong of the test, both of which are necessary in order for Apple to invoke the doctrine of equitable estoppel, because Apple has not established (and cannot establish) that: (i) the issues that Apple is seeking to resolve through

---

[9] Ohanian does not dispute Apple's contention that New York principles of contract construction govern an analysis of whether Apple – as a non-signatory – can attempt to invoke the protection of a purported "agreement" to arbitrate between Ohanian and T-Mobile under a theory of equitable estoppel. Mov. Br., p. 9. Regardless, "federal law and New York law are materially the same on the issue of whether a non-signatory may enforce an arbitration agreement." *City of Almaty*, 2019 U.S. Dist. LEXIS 211235, at *24 n.6.

arbitration are intertwined with the subject matter of Ohanian's purported "agreement" with T-Mobile (*i.e.*, the T&Cs); <u>and</u> (ii) there is a close relationship between the alleged "signatory" (*i.e.*, T-Mobile) and the "non-signatory" party (*i.e.*, Apple) as is required for Apple to compel arbitration based on equitable estoppel under New York law.  This mandates denial of the Apple Motion.

### 1. Ohanian Is Not Relying on the Terms of an <br> <u>"Agreement" with T-Mobile in Pursuing His Claims Against Apple</u>

In the Mov. Br., Apple offers the conclusory assertion that the first prong of the equitable estoppel test is met simply because Ohanian's injuries set forth in the Complaint allegedly "depend on [his] use" of a T-Mobile SIM card.  Mov. Br., p. 11.  Apple's superficial contention – which tellingly does not even mention the analysis that a court actually must undertake in considering whether this prong of the equitable estoppel test is met – is not only flawed and incorrect, but also disturbingly misleading.  Ohanian sets forth the correct standard below, and distinguishes the dearth of case law offered by Apple to support its flawed contention.

Claims are considered "intertwined" for purposes of equitable estoppel "where the merits of an issue between the parties is bound up with a contract binding on party and containing an arbitration clause."  *Denney*, 412 F. Supp. 2d at 298 (citing *JLM Indus.*, 387 F.3d at 178 n.7).  The plaintiff's *actual dependence on the underlying contract* in making out the claim against the non-signatory defendant is therefore always the *sine qua non* of an appropriate situation for applying equitable estoppel.  *Denney*, 412 F. Supp. 2d at 298 (citations omitted) (emphasis in original); *see also Different Drummer LLC v. Nat'l Urban League, Inc.*, No. 11 Civ. 4982, 2012 U.S. Dist. LEXIS 16494, at *17 (S.D.N.Y. Feb. 7, 2012).  In other words, "<u>the party seeking to compel arbitration must demonstrate that the party seeking to avoid arbitration relies on the terms of the agreement containing the arbitration provision in pursuing its claim</u>."  *Norcast,*

*S.ar.l.*, 2014 U.S. Dist. LEXIS 1197, at *18 (emphasis added) (citing *Oxbow Calcining USA Inc. v. Am. Indus. Partners*, 96 A.D.3d 646, 649-50 (1st Dep't 2012) (quoting *MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp., LLC*, 268 F.3d 58, 61 (2d Cir. 2001)).

Both *Different Drummer* and *Norcast* are particularly instructive on this point.  In *Different Drummer*, the court held that the defendant, a non-signatory to an arbitration agreement, could not invoke equitable estoppel because the plaintiff's claims against it neither relied on nor presumed the existence of the agreement containing the arbitration clause.  2012 U.S. Dist. LEXIS 16494, at *17.  According to the court in *Different Drummer*, because the plaintiff's claim against the non-signatory could "stand on its own," equitable estoppel was inapplicable.  *Id.* at *18.  The court in *Norcast* employed the same type of analysis in reaching a similar result.  In *Norcast*, the court rejected a non-signatory's attempt to invoke the protection of an agreement containing an arbitration clause, because the plaintiff's claims against that non-party did not "rely on the terms" of that agreement.  2014 U.S. Dist. LEXIS 1197 at *19.  According to the court in *Norcast*, because the plaintiff had not sought to avail itself of any "direct benefits" under the agreement containing the arbitration clause, the plaintiff was not estopped from denying the applicability of the arbitration clause contained therein.  *Id.* at *20.

Here, there is no question that Ohanian's claims asserted against Apple in the Complaint cannot possibly meet the first prong of the equitable estoppel test under New York law.  Quite obviously, none of Ohanian's claims make reference to or presume the existence of the T-Mobile T&Cs.  *See* Compl.  In fact, Ohanian is not relying on the T&Cs in any way, shape, or form in pursuing his claims for wrongdoing against Apple, or, for that matter, against T-Mobile.  *See id*.  Ohanian's claims against Apple are for violations of N.Y. GBL §§ 349 and 350, fraudulent misrepresentation, and unjust enrichment.  Ohanian is not seeking to "avail" himself of any

direct benefits of the T&Cs in pursuing his claims against Apple, and his claims against Apple can stand on their own, entirely independent of the T&Cs.  As the court in *Norcast* remarked, "[t]his case is not at all like cases where a party was estopped from avoiding an arbitration clause because it affirmatively availed itself of the benefits of an agreement containing an arbitration clause in running its business or in litigation."  2014 U.S. Dist. LEXIS 1197, at *19.

The two cases offered by Apple in support of its contention that Ohanian's claims meet the first prong of the equitable estoppel test, *Moss v. BMO Harris Bank, N.A.*, 24 F. Supp. 3d 281 (E.D.N.Y. 2014) and *Ragone v. Atl Video at Manhattan Ctr.*, No. 07 Civ. 6084, 2008 U.S. Dist. LEXIS 66369 (S.D.N.Y. Aug. 27, 2008), do not support a different result in the least.  First, *Moss* is entirely distinguishable, because unlike the instant case, the plaintiff's "entire case" in *Moss* depended on the contents of the agreements containing the arbitration clause, which led the court to find that the first prong of the equitable estoppel test was satisfied.  24 F. Supp. 3d at 289.  Second, *Ragone* is not even applicable here, because the parties <u>agreed</u> that sufficient facts existed indicating that the plaintiff's claims arose from the subject matter of the arbitration agreement, and as such, the first prong of the equitable estoppel test was not even at issue.  2008 U.S. Dist. LEXIS 66369, at *25.

Based on the foregoing, Apple cannot even meet the first prong of the equitable estoppel test, the Apple Motion should be denied on that basis, and this Court's analysis need not even proceed any further.  *See Different Drummer, LLC*, 2012 U.S. Dist. LEXIS 16494, at *19 (denying motion to compel arbitration because the non-signatory defendant failed the "first prong" of the equitable estoppel test).

2.    **Apple Has Not Made the Requisite**
      **Showing of a Close Relationship with T-Mobile**

With respect to the second prong of the equitable estoppel test as to Ohanian, Apple argues that the requisite "close relationship" exists with T-Mobile because the T&Cs purportedly require Ohanian to arbitrate his claims against unidentified "other parties" such as Apple, and the claims in the Complaint "only arise because [Ohanian] used Apple and T-Mobile's products together." Mov. Br., p. 11. Apple's contentions are nothing more than an ill-conceived attempt to subvert the applicable legal standard and the cases it relies on to support its contentions miss the mark.

Cases in which courts in this Circuit have found that a signatory was estopped from resisting a non-signatory's attempt to compel arbitration illustrate the "close relationship" required for purposes of applying equitable estoppel. *See Republic of Iraq v. ABB AG*, 769 F. Supp. 2d 605, 611 (S.D.N.Y. 2011) (citation omitted). "In those cases, estoppel does not result simply because there is a 'relationship of any kind' between the litigating parties and 'their dispute deals with the subject matter of an arbitration contract made by one of them.'" *Id*. (citing *Ross*, 547 F.3d at 144) (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 349 (2d Cir. 2008)). Instead, a sufficiently close relationship for purposes of equitable estoppel under the law in this Circuit <u>requires something more</u>, for instance, (i) that the non-signatory possess some sort of <u>corporate relationship</u> to a signatory party as a subsidiary, affiliate, agent, or other related business entity; (ii) that the signatory was required to provide services to the non-signatory and to follow the instructions and directives of the non-signatory; or (iii) that the non-signatory was explicitly tasked with performing certain duties in the contract containing the arbitration clause. *See Republic of Iraq*, 769 F. Supp. 2d at 611-12 (collecting cases) (emphasis added).

Here, Apple's purported reliance on the T&Cs to attempt to establish a close relationship with T-Mobile for purposes of its equitable estoppel argument as to Ohanian is unavailing. Significantly, Apple is not mentioned in the Arbitration Provision of the T&Cs, and as such, it is misleading for Apple to suggest that it is one of the "other parties" as to which arbitration was contemplated.  *See* Muzio Dec., Ex. I., p. 6.  This is especially true given that the T&Cs (i) actually set forth the specific types of "other parties" that fall within the Arbitration Provision in the T&Cs, namely, T-Mobile's <u>suppliers</u>, <u>dealers</u>, <u>authorized retailers</u>, or <u>vendors</u>; and (ii) expressly state that the T&Cs are between the signatory and T-Mobile and [its] controlled <u>subsidiaries</u>, <u>assignees</u>, and <u>agents</u>.   Muzio Dec., Ex I., pp. 2, 6 (emphasis added).   The Complaint does not allege that Apple is one of T-Mobile's suppliers, dealers, authorized retailers, vendors, subsidiaries, assignees, or agents (*see* Compl.), and Apple offers nothing in the Mov. Br. from which this Court could even make such an inference. Mov. Br., pp. 10-12.

Putting aside the T&Cs, Apple's fleeting contention is that it has a close relationship to T-Mobile because their products work together, and the dispute in this putative consumer class action deals with the <u>subject matter</u> of those products.   Mov. Br., p.  11.   Yet, this type of relationship between the signatory (T-Mobile) and the non-signatory (Apple) "is similar in neither degree nor kind to any of the relationships found sufficient in the estoppel context."  *See Republic of Iraq*, 769 F. Supp. 2d at 612.  There is no corporate relationship between Apple and T-Mobile, as made clear in their respective Rule 7.1 disclosure statements filed with this Court.[10] The T&Cs state nothing indicating that T-Mobile was required to provide any services to Apple or follow any instructions or directives given to it by Apple.  *See* Muzio Dec., Ex. I.  Further, the T&Cs do not task Apple with performing any duties whatsoever either to T-Mobile or to anyone

---

[10] *See* ECF Dkt No. 27 (Apple) and ECF Dkt. No. 29 (T-Mobile).

else.  *See id*.  The foregoing should lead this Court to conclude "without hesitation" that Apple does not have a "sufficient relationship" with T-Mobile that would entitle it to compel arbitration based on equitable estoppel.  *See Republic of Iraq*, 769 F. Supp. 2d at 612.

Finally, the case law offered by Apple does nothing to support its position.  Although the court in *Arellano v. T-Mobile USA, Inc.*, No. C 10-05663, 2011 U.S. Dist. LEXIS 41667 (N.D. Cal. Apr. 11, 2011), compelled arbitration with a non-signatory under the same T-Mobile T&Cs at issue in the instant case, that case is wholly distinguishable and inapplicable for numerous reasons.  First it is an out-of-circuit case, and not binding.  Second, *Arellano* did not involve an attempt by the non-signatory to compel arbitration based on estoppel; rather, the non-signatory relied on a third-party beneficiary theory, which Apple does not do here.  *Id*. at *16-17.  Further, the court compelled arbitration in *Arellano* because HTC – the non-signatory – was a "supplier" and "third-party vendor" of T-Mobile.  *Id*.  Specifically, the complaint in *Arellano* alleged that HTC designed and manufactured "T-Mobile myTouch 4g" smartphones.  *Id*. at *2.  As such, HTC, unlike Apple, expressly fit the definition of "other parties" against whom arbitration was contemplated in the T&Cs.  *Id*. at *2-3, 17.

Apple's reliance on *Lismore v. Societe Generale Energy Corp.*, No. 11 Civ. 6705, 2012 U.S. Dist. LEXIS 118157 (S.D.N.Y. Aug. 17, 2012) also is misplaced.  Contrary to Apple's misreading of the decision, the *Lismore* court did not compel arbitration on the basis that the agreement containing an arbitration clause "implicitly" recognized the possibility of arbitration with a non-signatory.  Mov. Br., p. 11.  Rather, the court in *Lismore* did so because the first prong of the equitable estoppel test was met, and further, because the allegations in the complaint revealed that the non-signatory was "completely controlled and dominated" by the signatory. *See* 2012 U.S. Dist. LEXIS 118157, at *20, 22-23.  As such, "the parties to the…contract

certainly understood that [the signatory] controlled [the non-signatory entity] and estoppel [was] therefore appropriate." *Id.* at *23.

The foregoing makes clear that Apple has not established that it has a "close relationship" with T-Mobile as is necessary for it to invoke the doctrine of equitable estoppel, and the Apple Motion should be denied as to Ohanian.

## II.

## **APPLE CANNOT COMPEL ARBITRATION WITH LOPEZ**

Apple's attempt to compel arbitration with Lopez under Florida law fares no better than its meritless attempt to do so with Ohanian under New York law.[11]

First and foremost, given Lopez's dismissal of T-Mobile from this action pursuant to Fed. R. Civ. P. 41(a), Lopez's claims against Apple cannot possibly be interpreted to fall within the scope of the Arbitration Provision of the T&Cs, which expressly provide that claims against "other parties" aside from T-Mobile are subject to arbitration only when the signatory (*i.e.*, Lopez) also asserts claims against T-Mobile in the same proceeding. This is fatal to any attempt by Apple to compel arbitration with Lopez.

Further, any attempt by Apple to invoke equitable estoppel to compel arbitration with Lopez fails based on an analysis of the two scenarios in which that doctrine can be invoked under well-settled Florida law. First, Lopez is not relying on the terms of any agreement with T-Mobile, *i.e.*, the T&Cs, to assert his claims against Apple. Second, given Lopez's dismissal of T-Mobile from this action, he is not making any allegations of concerted misconduct by both the non-signatory (Apple) and the signatory (T-Mobile).

---

[11] For purposes of opposing the Apple Motion, Lopez – as a resident of the State of Florida – concedes that Florida law would apply to an analysis of whether Apple, as a non-signatory to the T&Cs, can attempt to compel arbitration with him based on an equitable estoppel theory.

**A.**     **Apple Cannot Compel Arbitration Because Lopez's Claims**
        **Against Apple Do Not Fall Within the Scope of His Agreement with T-Mobile**

Apple's sole theory supporting its attempt to compel arbitration with Lopez is equitable estoppel.  Mov. Br., pp. 9-10.  However, before even considering whether Apple can rely on equitable estoppel to compel arbitration with Lopez, this Court must analyze whether Lopez's dispute with Apple falls within the scope of the T&Cs.  Indeed, under Florida law, even assuming "a non-signatory to an agreement containing an arbitration clause can invoke the doctrine of equitable estoppel to access that clause, [it] can compel arbitration under it only if [the] dispute with the signatory falls within the scope of the arbitration clause." *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc*., 845 F.3d 1351, 1355 (11th Cir. 2017).

Here, Lopez has dismissed his claims against T-Mobile pursuant to Fed. R. Civ. P. 41(a).[12]  "It is hornbook law that a voluntary dismissal without prejudice under Rule 41(a) leaves the situation as if the action had never been filed."  *United States v. L - 3 Communs. EOTech, Inc.*, 921 F.3d 11, 19 (2d Cir. 2019).  Accordingly, Lopez is not currently and never was asserting claims against Apple and T-Mobile "in the same proceeding," as is required for Apple to be able to invoke the Arbitration Provision of the T&Cs concerning Lopez.  *See* Muzio Dec., Ex. J, pp. 6-7; Ex. K., pp. 6-7.  On that basis, the Apple Motion must be denied as to Lopez.

**B.**     **Apple Cannot Compel Arbitration Under an Equitable Estoppel Theory**

Notwithstanding Lopez's argument in Point II.A., *supra*, an analysis of the principles of equitable estoppel in the context of arbitration provisions under Florida law also mandates denial of the Apple Motion as to Lopez.

---

[12] *See* ECF Dkt. No. 44.

Under the doctrine of equitable estoppel, Florida courts have permitted a non-signatory defendant to enforce an arbitration clause against a signatory plaintiff either (1) when the signatory to the written agreement containing an arbitration clause relies on the terms of the written agreement in asserting its claims against the non-signatory; or (2) when there are allegations of concerted action by both a non-signatory and one or more of the signatories to the contract. *Allscripts Healthcare Sols., Inc. v. Pain Clinic of Northwest Fla, Inc.*, 158 So. 3d 644, 646 (Fla. Dist. Ct. App. 2014) (citing *Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 944 (Fla. Dist. Ct. App. 2004) (additional citation omitted)).

As discussed below, Apple has failed to demonstrate that either situation is applicable here, because (i) Lopez is in no way relying on the terms of the T-Mobile T&Cs in pursuing his claims against Apple in the Complaint; and (ii) there are no allegations in the Complaint of concerted action by a non-signatory (Apple) and a signatory (T-Mobile) given that Lopez has dismissed his claims against T-Mobile.

### 1.  Lopez Is Not Relying on the Terms of Any Written Agreement with T-Mobile to Assert His Claims Against Apple

Apple argues in the Mov. Br. that it can rely on equitable estoppel to compel arbitration with Lopez because Lopez's claims against Apple "depend on [his] use of a T-Mobile SIM card," the first circumstance in which a non-signatory can invoke that doctrine under Florida law. Mov. Br., p. 10. If this sounds familiar, it is. In fact, it is precisely the same argument that Apple raised on the first prong of the equitable estoppel test under New York law concerning Ohanian, which Ohanian laid to waste in Point I.B.1.

It is well-settled under Florida law that "reliance on the contract" in the context of equitable estoppel requires "that a party must actually depend on the underlying contract to assert its claims." *Allscripts*, 158 So. 3d at 647; *see also Bah Sales Assoc., LLC v. Byers*, 701 F.3d

1335, 1343 (11th Cir. 2012); *Schreiber v. Ally Fin., Inc*., 634 Fed. App'x 263, 264 (11th Cir. 2015) (summary order) (same).

State courts in Florida, as well as the 11th Circuit and district courts within the 11th Circuit interpreting Florida law, routinely reject attempts by non-signatories to rely on equitable estoppel when the plaintiff is not relying on the contract or agreement containing the arbitration clause in asserting claims against the non-signatory.   *See, e.g.*, *Rolls-Royce PLC v. Royal Caribbean Cruises, Ltd.*, 960 So. 2d 768, 771 (Fla. Dist. Ct. App. 2007) (rejecting non-signatory's attempt to compel arbitration under equitable estoppel where resolution of the plaintiff's claims against the non-signatory did not require "reference to or construction" of the agreement containing the arbitration clause); *Schreiber*, 634 Fed. App'x at 265 (rejecting non-signatory's attempt to compel arbitration based on equitable estoppel because the plaintiff's claims did not "rely on" the terms of the agreement containing the arbitration clause); *Mims v. Global Credit & Collection Corp.*, 803 F. Supp. 2d 1349, 1358 (S.D. Fl. 2011) (rejecting non-signatory's attempt to invoke equitable estoppel to compel arbitration because the plaintiff's claims against it were not based on the terms of an agreement containing an arbitration clause, and instead, the plaintiff alleged that the non-signatory violated federal consumer protection statutes).

The instant case is no different.  Like Ohanian, Lopez is not relying on the T&Cs in any way, shape, or form in pursuing his claims for wrongdoing against Apple.  *See* Compl.  Lopez's claims against Apple in the Complaint are for violations of N.Y. GBL §§ 349 and 350, fraudulent misrepresentation, and unjust enrichment, and are entirely independent of the T-

Mobile T&Cs.  *Id*.  As such, Apple cannot rely on this branch of equitable estoppel to compel arbitration with Lopez under Florida law.[13]

### 2. Lopez Makes No Allegations of Concerted Misconduct by Apple and T-Mobile

Apple's last ditch effort to compel arbitration with Lopez is based on the second circumstance in which a non-signatory can invoke equitable estoppel under Florida law, namely, when the plaintiff raises allegations of "concerted misconduct" by a non-signatory and a signatory.  Mov. Br., p. 10.  Specifically, Apple argues that equitable estoppel applies under this scenario because Lopez's claims in the Complaint "depend on" such interdependent conduct by Apple and T-Mobile.  *Id*.

However, given Lopez's dismissal of his claims against T-Mobile, there no longer are any allegations in the Complaint by Lopez setting forth any interdependent conduct by Apple and T-Mobile, let alone any "concerted misconduct."[14]   Accordingly, Apple's "concerted misconduct" argument is now moot, and it cannot invoke equitable estoppel on that ground.

---

[13] The only two cases offered by Apple on this specific point are *Armas v. Prudential Sec., Inc*., 842 So. 2d 210 (Fla. Dist. Ct. App. 2003) and *Kaplan Indus v. Oaktree Capital Mgmt., LP*, No. 11-cv-22064, 2011 U.S. Dist. LEXIS 135670 (S.D. Fl. Aug. 18, 2011), both of which do not apply to the facts here.  The court in *Armas* held that a non-signatory could invoke equitable estoppel because the claims asserted against it were <u>based</u> on the underlying contractual obligations giving rise to the claims.  842 So. 2d at 212.  Similarly, the court in *Kaplan* allowed a non-signatory to invoke equitable estoppel because the plaintiff had to "rely on the terms" of the contract containing the arbitration clause in asserting its claims in the complaint.  2011 U.S. Dist. LEXIS 135670, at *6.

[14] *Escobal v. Celebration Cruise Operator, Inc.*, 482 Fed. App'x 475 (11th Cir. 2012) and *Armas, supra* – cited by Apple in support of this argument – are not applicable, because the plaintiff in those cases <u>asserted claims</u> against <u>both</u> the signatory and non-signatory that involved concerted misconduct, as is required to satisfy the requirement of equitable estoppel under Florida law.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs Ohanian and Lopez respectfully request that this Court deny the Apple Motion in its entirety.

Dated: New York, New York
       October 23, 2020

/s/ Aaron J. Solomon
Aaron J. Solomon, Esq.
Christopher J. Rados, Esq.
OVED & OVED LLP
*Attorneys for Plaintiffs*
401 Greenwich Street
New York, New York 10013
Tel: 212.226.2376