UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                                    :
  TIGRAN OHANIAN, et al.,                           :
                                  Plaintiffs,       :
                                                    :          20 Civ. 5162 (LGS)
                 -against-                           :
                                                    :          OPINION & ORDER
  APPLE INC., et al.,                               :
                                  Defendants.  :
----------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

        Plaintiffs Tigran Ohanian and Regge Lopez bring this putative class action against

Defendants T-Mobile USA, Inc. ("T-Mobile") and Apple, Inc. ("Apple"), alleging violations of

New York General Business Law ("N.Y. GBL") sections 349 and 350, fraudulent

misrepresentation and unjust enrichment.  Defendants filed motions to compel arbitration.

Decision is reserved on Defendants' motions to compel arbitration of Ohanian's claims pending

further proceedings.  Apple's motion to compel arbitration of Lopez's claims is denied.

## I.      BACKGROUND

        The following facts relevant to the current motions are drawn from the Complaint,

exhibits and declarations submitted in this case.

        Ohanian and Lopez are T-Mobile customers.  On April 19, 2016, Ohanian activated a

prepaid line of service with T-Mobile and purchased a subscriber information module card

("SIM card"), which provided a phone number for use in his iPhone 6.  The phone automatically

linked Ohanian's Apple ID with the phone number, and Ohanian used the number for about one

year.  On January 16, 2017, Lopez also activated a prepaid line of service with T-Mobile, and T-

Mobile installed a SIM card on his phone, providing the same phone number previously given to

Ohanian.  Lopez's phone also associated the phone number with Lopez's Apple account.

Ohanian subsequently received unwanted iMessages and FaceTime calls, intended for Lopez, the new user of the phone number.

At the time Ohanian and Lopez opened their T-Mobile accounts, T-Mobile's practice was to provide prepaid customers with a Prepaid Service Confirmation Form (the "Form").  The Form provided to Lopez informed him that by activating or using T-Mobile's services, he was accepting T-Mobile's Terms and Conditions ("T&Cs") and also that T-Mobile requires arbitration of disputes:

> By activating or using T-Mobile service, you accept T-Mobile's Terms and Conditions.  **T-Mobile requires Arbitration of Disputes unless you opt-out within 30-days of activation.**  If you fail to activate service within 30 days from purchase, this will also be considered acceptance of T-Mobile's Terms and Conditions.  For details see T-Mobile's Terms and Conditions at www.T-Mobile.com/terms-conditions or www.T-Mobilepr.com for Puerto Rico customers.

*See* Declaration of Christopher Muzio ("Muzio Decl."), Ex. C, at Dkt. No. 32 (emphasis in original).  Ohanian asserts that the only document he received in connection with his transaction was a receipt.  He denies receiving the Form accompanying his service plan or being informed of any T&Cs.

Ohanian's receipt describes the items purchased in his April 2016 transaction.  At the bottom of the first page are lengthy paragraphs, providing additional information about prepaid services, plan features and data plans.  The paragraph beginning with "Prepaid Services" refers to the T&Cs in the final sentence as below:

> Prepaid Services.  Requires an active T-Mobile Account.  Pricing and plans subject to change at any time without notice, and may have changed prior to purchase of refill card.  T-Mobile No Annual Contract (prepaid) service is available for 90 days following Activation of this refill.  Different terms apply to FlexPay and prepaid Mobile Broadband service; see plans for details.  Data roaming not available for prepaid plans.  Partial minutes rounded up for billing; data usage rounded up to nearest KB each use.  No cash redemption value.  Non-

refundable.  Not responsible if lost or stolen.  See brochures and T-Mobile Terms and Conditions at T-Mobile.com for details.

*See* Muzio Decl., Ex. A.

T-Mobile asserts that different versions of the T&Cs applied to each Plaintiff and at various times.  Each version includes the same arbitration provision:

> **YOU AND WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW . . . ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATON OR IN SMALL CLAIMS COURT.**  This includes any claims against other parties relating to Services or Devices provided or billed to you (such as our suppliers, dealers, authorized retailers, or third party vendors) whenever you also assert claims against us in the same proceeding.

*See* Muzio Decl., Ex. I-K (emphasis in original).  The T&Cs also have a governing law provision, which states, "This Agreement is governed by the Federal Arbitration Act, applicable federal law, and the laws of the state in which your billing address in our records is located, without regard to the conflicts of laws rules of that state."  Ohanian provided an international billing address; Lopez's billing address in T-Mobile's records is in Florida.

Ohanian and Lopez allege that T-Mobile and Apple engaged in false, deceptive and materially misleading consumer-oriented conduct concerning T-Mobile SIM cards and privacy features of Apple iPhones.  The Complaint separately asserts claims against each of T-Mobile and Apple for violations of N.Y. GBL sections 349 and 350, fraudulent misrepresentation, and unjust enrichment.  As to T-Mobile, the Complaint alleges that it deceived consumers by "failing to disclose that its practice of recycling phone numbers linked to SIM cards, and selling those SIM cards to consumers without requiring prior users to manually disassociate their Apple IDs from the phone numbers associated with the recycled SIM cards, did not protect the privacy of users' data and confidential personal information."  As to Apple, the Complaint alleges that

Apple represented that the iPhone was designed to protect the privacy of users' data but failed to disclose the "significant security flaw in the Apple iOS software . . . known only to Apple that allowed iMessage correspondence sent by iPhone users and FaceTime calls made by iPhone users to be improperly directed to and accessed by third parties."

T-Mobile and Apple moved to compel arbitration of the claims based on the arbitration provision contained in T-Mobile's T&Cs.  After Defendants filed their motions, Lopez filed a notice of voluntary dismissal, dismissing his claims against T-Mobile.

## II.   LEGAL STANDARD

When deciding motions to compel arbitration, courts apply a "standard similar to the one applicable to a motion for summary judgment." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 281 n.1 (2d Cir. 2019) (citation omitted).  That is, courts consider "all relevant, admissible evidence submitted by the parties" and must "draw[] all reasonable inferences in favor of the non-moving party." *Id.* (citing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)).  Courts, rather than arbitrators, must decide whether parties have agreed to arbitrate "unless the parties clearly and unmistakably provide otherwise." *Nicosia*, 834 F.3d at 229.  "Where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, we may rule on the basis of that legal issue and avoid the need for further court proceedings." *Starke*, 913 F.3d at 288.  However, "[i]f there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Nicosia*, 834 F.3d at 229; *see* 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.").  The party challenging the existence of an agreement must make "an unequivocal denial that the agreement had been made . . . and some evidence should [be] produced to substantiate the denial." *Interocean Shipping Co. v. Nat'l Shipping & Trading*

*Corp.*, 462 F.2d 673, 676 (2d Cir. 1972); *accord Mobile Real Est., LLC v. NewPoint Media Grp., LLC*, 460 F. Supp. 3d 457, 471 (S.D.N.Y. 2020).

The Federal Arbitration Act ("FAA") was enacted to counteract "widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The FAA reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Id.*; *accord Dr.'s Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019). "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 297 (2010) (emphasis in original). Accordingly, when considering a motion to compel arbitration, courts must determine: (1) whether the parties agreed to arbitrate, and if so, (2) whether the scope of that agreement encompasses the claims at issue. *See Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 1117 (2020). Where a party brings a challenge to the very formation of a contract containing an agreement to arbitrate, the court must resolve that challenge to determine whether to compel arbitration, *see Granite Rock Co.*, 561 U.S at 296-97, and apply state contract law principles, *see id.* at 296; *Nicosia*, 834 F.3d at 229. State law governs whether a nonsignatory may enforce an arbitration clause. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009).

## III.   DISCUSSION

Decision is reserved on Defendants' motions to compel arbitration of Ohanian's claims pending resolution of the issue of whether Ohanian agreed to arbitrate with T-Mobile. Apple's motion to compel arbitration of Lopez's claims is denied.

A.       **Ohanian and T-Mobile**

Ohanian has sufficiently raised an issue of fact as to whether he agreed to arbitrate with

T-Mobile, requiring further proceedings to resolve the motions as to Ohanian's claims.  Under

New York law,[1] the party seeking arbitration bears the burden of proving that a valid agreement

to arbitrate exists by a preponderance of evidence.  *See Progressive Cas. Ins. Co. v. C.A.*

*Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993) (applying New York

law); *Solis v. ZEP LLC*, No. 19 Civ. 4230, 2020 WL 1439744, at *4 (S.D.N.Y. Mar. 24, 2020).

To be binding, a contract requires a "meeting of the minds" and "a manifestation of mutual

assent."  *Starke*, 913 F.3d at 288-89 (quoting *Express Indus. & Terminal Corp. v. N.Y. Dep't of*

*Transp.*, 715 N.E.2d 1050 (N.Y. 1999)).  "The manifestation of mutual assent must be

sufficiently definite to assure that the parties are truly in agreement with respect to all material

terms."  *Id.* at 289 (citing *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 417 N.E.2d 541

(N.Y. 1981)).  To determine whether there was an objective meeting of the minds, courts look to

the elements of offer and acceptance.  *See id.* (citing *Indus. & Terminal Corp.*, 715 N.E.2d

1050).  "Where an offeree does not have *actual* notice of certain contract terms, he is

nevertheless bound by such terms if he is on *inquiry* notice of them and assents to them through

conduct that a reasonable person would understand to constitute assent."  *Id.*

T-Mobile contends that the Form provided Ohanian notice of the T&Cs, including the

arbitration provision, and that Ohanian accepted those contractual terms when he purchased the

T-Mobile SIM card and activated his line of service.  The Form clearly states that use of T-

---

[1] The parties' memoranda of law assume that New York substantive law governs the relationship
between Ohanian and T-Mobile, which is sufficient to establish the applicable choice of law.
*See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009); *PetEdge, Inc. v. Garg*,
234 F. Supp. 3d 477, 486 (S.D.N.Y. 2017).

Mobile's services would be considered acceptance of T-Mobile's T&Cs and that T-Mobile requires arbitration of disputes.  T-Mobile relies on the Declaration of T-Mobile's custodian of records Christopher Muzio to establish that the Form would have been provided to Ohanian. However, there is an issue of fact as to whether Ohanian actually received the Form.  Plaintiff attests that at the time of his purchase, he received only a receipt and did not receive the Form or any information indicating that he was accepting or agreeing to the T&Cs.  Contrary to T-Mobile's contentions, Ohanian's "unequivocal denial" that he did not agree to arbitrate is supported by "some evidence," sufficient to warrant a trial under 9 U.S.C. § 4.  *See Interocean Shipping Co.*, 462 F.2d at 676.  T-Mobile argues that Ohanian's affidavit is insufficient to raise a triable issue of fact because it is self-serving and his statement that his receipt did not refer to the T&C's is contradicted by the record.  These arguments are unpersuasive.  "[A] plaintiff may not rely on a self-serving declaration to create a justiciable issue where none otherwise exists." *Shron v. LendingClub Corp.*, No. 19 Civ. 6718, 2020 WL 3960249, at *4 (S.D.N.Y. July 13, 2020); *see New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 326 (S.D.N.Y. 2015) ("[U]nsubstantiated and self-serving testimony is insufficient, without more," to create a genuine issue of material fact.).  Still, because Ohanian "raise[s] an important question of notice," his declaration cannot be easily disregarded.  *See Shron*, 2020 WL 3960249, at *4.  Viewed in the light most favorable to Ohanian, the sworn denial is sufficient to create a genuine issue of fact. Ohanian's testimony is colorable because he recalls in detail what he received with his purchase, and his denial is not wholly unsubstantiated.  The Form that T-Mobile asserts "would have" been provided to Ohanian contains no information identifying the recipient.  (By contrast, Lopez's Form, also attached to the Muzio Declaration, includes a phone number traceable to Lopez.) Furthermore, and bearing in mind that it is T-Mobile's burden to prove the existence of an

agreement to arbitrate, T-Mobile's testimony does not necessarily lead to the conclusion that

Ohanian's denial is incredible.  T-Mobile attests to a "regular practice and procedure" of

requiring customers to agree to the T&Cs when they activate a line of service; but T-Mobile has

not offered evidence to show that Ohanian could not have gotten T-Mobile service without such

an agreement.  *See Greenberg v. Ameriprise Fin. Servs., Inc.*, No. 15 Civ. 3589, 2016 WL

3526025, at *5 (E.D.N.Y. Mar. 31, 2016) (a plaintiff's general denial of an agreement to

arbitrate, unsupported by any sworn declaration, was insufficient where the agreement was a

"pre-condition" to the plaintiff's registration with an organization, which was undisputed by the

parties).  Ohanian's allegedly contradictory statement that his receipt did not reference the T&Cs

does not discredit Ohanian's unrelated statement that he did not receive the Form during the

transaction.

   T-Mobile contends that the receipt alone, which Ohanian admittedly received, is

sufficient to find that he agreed to arbitrate pursuant to the T&Cs.  The receipt refers to the

T&Cs and the T-Mobile website.  However, in contrast to the cases on which T-Mobile relies,

the unsigned receipt plainly is not a written contract which by its terms "incorporates by

reference" the T&Cs.

   In the absence of a written agreement between Ohanian and T-Mobile, the remaining

question is whether Ohanian was on inquiry notice of the T&Cs, containing the arbitration

provision, to which he then "assented" by use of the T-Mobile services.  A person can assent to

terms even if she does not actually read them, but the "offer [must nonetheless] make clear to [a

reasonable] consumer" both that terms are being presented and that they can be adopted through

the conduct that the offeror alleges constituted assent.  *See Schnabel v. Trilegiant Corp.*, 697

F.3d 110, 123 (2d Cir. 2012) (citing *Specht v. Netscape Commc'ns. Corp.*, 306 F.3d 17, 29 (2d

Cir. 2002) (applying California law)).[2]   "In determining whether an offeree is on inquiry notice

of contract terms, New York courts look to whether the term was obvious and whether it was

called to the offeree's attention."   *Starke*, 913 F.3d at 289 (citing 22 N.Y. Jur. 2d Contracts § 29).

"This often turns on whether the contract terms were presented to the offeree in a clear and

conspicuous way."   *Id.*   "[R]eceipt of a physical document containing contract terms or notice

thereof is frequently deemed, in the world of paper transactions, a sufficient circumstance to

place the offeree on inquiry notice of those terms," *Specht*, 306 F.3d at 31; however, the question

of notice is a fact-intensive inquiry, *see Starke*, 913 F.3d at 289 (citing *e.g.*, *Arthur Philip Export

Corp. v. Leatherone, Inc.*, 87 N.Y.S.2d 665, 667 (1st Dep't 1949) (refusing to enforce contract

terms that were inconspicuously placed in "small type and in parenthesis" on the back of a

confirmation order)).

The receipt alone does not provide sufficient notice that by using T-Mobile's services,

Ohanian was agreeing to arbitrate per the T&Cs.  First, the reference to the T&Cs is

inconspicuous.  The top half of the receipt includes detailed information regarding the purchased

items in varying font styles, including capitalization, bold, and underlining, and in the center of

the page is a text box advertising T-Mobile accessories in bold font. By contrast, the reference to

the T&Cs is at the bottom of the receipt, at the end of the first of several lengthy, single-spaced

paragraphs, which detail information about prepaid services, plan features and data plans in

normal typeface, size-11 font.  The first paragraph begins with the heading "Prepaid Services"

and lists various attributes of prepaid plans -- *e.g.*, "Data roaming not available for prepaid

---

[2] New York and California apply "substantially similar rules for determining whether the parties
have mutually assented to a contract term."  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir.
2017).

plans." The list says nothing about arbitration or disputes. Following the list is the reference, "See brochures and T-Mobile Terms and Conditions at T-Mobile.com for details."[3]

Second, this reference does not put a reasonable consumer on notice of contractual terms or that by using T-Mobile's service she agrees to be bound by them. An unsigned receipt does not have obvious contractual significance, and the language of the receipt does not signal to a reasonable consumer the acceptance of contractual terms. Instead, a reasonable consumer would believe that she should refer to the "brochures" and the T&Cs if she wants further details regarding attributes of prepaid services. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 79 (2d Cir. 2017) ("[T]he language '[b]y creating an Uber account, you agree' is a clear prompt directing users to read the Terms and Conditions and signaling that their acceptance of the benefit of registration would be subject to contractual terms."); *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 468 (S.D.N.Y. 2017) (applying New York law) ("There is . . . no reason to believe that 'Terms of Service' is self-defining for reasonable consumers."). Based on the receipt alone, a reasonable consumer would not have been on inquiry notice of the existence of contract terms governing the consumer relationship and the conduct required to assent to such terms.

Because "there is an issue of fact as to the making of the agreement for arbitration," further proceedings are necessary to decide Defendants' motion to compel arbitration of Ohanian's claims. *See Nicosia*, 834 F.3d at 229; 9 U.S.C § 4.

---

[3] A useful comparison is the notice provided by the T-Mobile receipts accompanying Lopez's 2018 and 2020 transactions. The first standalone paragraph in each receipt is a single sentence that explicitly states, "If you activate or use T-Mobile service, or purchase a T-Mobile device, you agree to T-Mobile's Terms and Conditions and any terms specific to your rate plan." The third full paragraph -- beginning with a bold heading "**Disputes.**" -- states in all-caps that T-Mobile "REQUIRES ARBITRATION OF DISPUTES" and provides the website address for the T&Cs. This clear presentation of contract terms is absent in Ohanian's receipt.

### B.      Lopez and Non-Signatory Apple

After dismissing his claims against T-Mobile, Lopez asserts claims only against Apple. Apple seeks to compel Lopez to arbitrate pursuant to Lopez's agreement to arbitrate with T-Mobile.  Apple's motion as to Lopez's claims is denied because Apple is not a party to the T-Mobile agreement, and Apple has not shown that it may enforce the agreement against Lopez. While the federal policy favoring arbitration "requires courts to enforce the bargain of the parties to arbitrate," it "cannot possibly require the disregard of state law permitting arbitration by . . . nonparties to the written arbitration agreement."  *See KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (citations and quotation marks omitted).

State contract law determines whether a non-signatory may enforce an agreement to arbitrate.  *See Arthur Andersen LLP*, 556 U.S. at 629-32.  Here, the parties agree that Florida law applies per the T-Mobile choice-of-law provision.  Applying Florida law, courts consistently state that, "[o]rdinarily, a party cannot compel arbitration under an arbitration agreement to which it was not a party," *Beck Auto Sales, Inc. v. Asbury Jax Ford, LLC*, 249 So. 3d 765, 768 (Fla. Dist. Ct. App. 2018), subject to certain exceptions, including equitable estoppel.  This general rule stems from the principle that arbitration is a matter of consent, since "no party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate." *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999); *accord Beck Auto Sales, Inc.*, 249 So. 3d at 767;[4] *see also, e.g.*, *Marcus v. Fla. Bagels, LLC*, 112 So. 3d 631, 633 (Fla. Dist. Ct.

---

[4] Judgment of an intermediate state court, "although not authoritative, . . . 'is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'"  *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 210 (2d Cir. 2006) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)).

App. 2013) ("An obligation to arbitrate is based on consent, and for this reason a non-signatory to a contract containing an arbitration agreement ordinarily cannot compel a signatory to submit to arbitration." (quotation marks omitted)).  Apple asserts that Florida law allows it to enforce the arbitration provision based on the doctrine of equitable estoppel.  On reply, Apple also argues that -- regardless of whether equitable estoppel applies -- it is entitled to compel arbitration because Lopez consented to arbitrate claims with third parties pursuant to the terms of the arbitration provision.  Neither argument is persuasive.

The doctrine of equitable estoppel, under Florida law, does not require Lopez to arbitrate its claim against Apple.  Principles of equitable estoppel may require a signatory to an arbitration agreement to arbitrate claims against a non-signatory in two circumstances.  *See Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017) (applying Florida law).  First, equitable estoppel may apply when "the signatory . . . must rely on the terms of the written agreement in asserting its claims against the nonsignatory," *id.*, or in other words, when "each of the signatory's claims against a non-signatory make reference to or presume the existence of a written agreement," *Armas v. Prudential Secs., Inc.*, 842 So. 2d 210, 212 (Fla. Dist. Ct. App. 2003); *accord Physician Consortium Servs.*, *LLC v. Molina Healthcare, Inc.*, 414 F. App'x 240, 242 (11th Cir. 2011).  Second, Florida's doctrine of equitable estoppel may apply when the claims allege "substantially interdependent and concerted misconduct" by the signatory and the non-signatory.  *See Beck Auto Sales, Inc.*, 249 So. 3d at 767.

The Complaint neither alleges any claims against Apple that "make reference to or presume the existence of a written agreement," nor, in asserting the claims, "rel[ies] on the terms of the written agreement."  The claims relate to Apple's "failure to disclose" a "security flaw" that "allowed iMessage correspondence sent by iPhone users and FaceTime calls made by

12

iPhone users to be improperly directed to and accessed by third parties," when a user receives a recycled T-Mobile phone number, previously associated with a different Apple ID.  Contrary to Apple's arguments, these claims do not "presume the existence" of any agreement merely because the factual allegations involve the use of a T-Mobile SIM card, which may be subject to T-Mobile's T&C's.  No agreement between Lopez and T-Mobile is necessary for Lopez to assert his claims against Apple.  *Compare, e.g., Allscripts Healthcare Sols., Inc. v. Pain Clinic of N.W. Fla., Inc.*, 158 So. 3d 644, 647 (Fla. Dist. Ct. App. 2014) ("While it is certainly true that this lawsuit would not exist but for the fact that the Doctors purchased the software licenses from the Subsidiary, the causes of action in the Complaint are not attempts to enforce contractual rights under the master agreements.") *with Kaplan Indus., Inc. v. Oaktree Capital Mgmt., LP*, 2011 WL 5578976, at *2 (S.D. Fla. Aug. 18, 2011) ("both counts of Plaintiff's Complaint [against non-signatory] presume the existence of [and address violations of] the . . . Agreement, which provided the basis for Plaintiff's business relationship with [signatory defendant]").

The second circumstance warranting application of equitable estoppel under Florida law -- allegations of substantially interdependent and concerted misconduct by a signatory and non-signatory -- also is not present here.  Lopez's claims against T-Mobile and Apple do not allege any *interdependent* or *concerted* misconduct by T-Mobile and Apple.  The Complaint makes separate allegations about Apple and its conduct, including Apple's alleged knowledge and deliberate concealment of security breaches.  The allegations referencing both Defendants describe how Apple's and T-Mobile's actions *independently* caused harm, inadvertently compounding the problems.  *See, e.g.*, Compl. ¶ 5 ("Apple's failure to disclose . . . *as well as* T-Mobile's failure to disclose . . . caused consumers . . . to become the unsuspecting victims of extensive data security breaches" (emphasis added)); ¶ 44 ("neither Apple nor T-Mobile ever

voluntarily disclosed to consumers"); ¶ 45 (Apple's security flaw was "*compounded*" by T-Mobile by engaging in "deceptive SIM card practices" (emphasis added)).  Lopez's claims are not predicated on any allegations that T-Mobile and Apple colluded or otherwise acted in concert, even though the alleged use of Apple and T-Mobile products and services together gave rise to the alleged misdirected iMessages or FaceTime calls.  Accordingly, equitable estoppel is not applicable here.  *Compare, e.g., Perdido Key Island Resort Dev., L.L.P. v. Regions Bank*, 102 So. 3d 1, 6 (Fla. Dist. Ct. App. 2012) ("There is not even any allegation of 'concerted conduct' through which the guarantors caused the borrowers to breach their obligations under the note. Thus, equitable estoppel is not applicable here."), *with Lash & Goldberg LLP v.Clarke*, 88 So. 3d 426, 427-28 (Fla. Dist. Ct. App. 2012) ("The complaint contained allegations that the defendants acted together," and "generally ties [non-signatory] defendants to" signatories.), *and Kolsky v. Jackson Square, LLC*, 28 So. 3d 965, 970 (Fla. Dist. Ct. App. 2010) (The "complaint alleges a conspiracy among the signatory appellant . . . and the non-signatory appellants."), *and Koechli v. BIP Intern., Inc.*, 870 So. 2d 940, 945 (Fla. Dist. Ct. App. 2004) ("[T]he facts constituting the alleged misconduct of [matter referred to arbitration] are substantially the same facts on which [the signatory] relies to demonstrate the alleged misconduct of [the non-signatories] in the case before us.").

Apple argues that, under Florida law, claims merely need to "arise" from an agreement with a "broad" arbitration clause for equitable estoppel to apply.  This is incorrect.  The cited case law reflects that courts have construed arbitration clauses to include non-signatories where claims alleged against the non-signatories were derived from the agreements or where there was an agency relationship between the signatory and non-signatory.  *See, e.g.*, *Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1311-12 (11th Cir. 2005) (applying federal law, as the decision

pre-dates *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)) (arbitration clause "broad

enough to permit [non-signatory] entities to invoke it," because claims derive from the loan

servicing "relationship" that "results from" the promissory note); *Sas v. Phoenix Graphics*, 700

So. 2d 422, 423 (Fla. Dist. Ct. App. 1997) (arbitration clause "broad enough" where claims

against non-signatories "stem from their legal representation" of the signatories "in the making

of the underlying agreements" containing the arbitration clauses); *Cuningham Hamilton Quiter,*

*P.A. v. B.L. of Miami, Inc.*, 776 So. 2d 940, 941 (Fla. Dist. Ct. App. 2000) (finding claims

"intertwined" with the contract, which mandated that "all parties necessary to resolve a claim

shall be parties to the same arbitration proceeding"); *Vic Potamkin Chevrolet v. Bloom*, 386 So.

2d 286, 288 (Fla. Dist. Ct. App. 1980) (arbitration clause "broad enough to include persons

within the respondeat superior doctrine").  These circumstances are not present here.

On reply, Apple argues in the alternative that it can invoke the arbitration provision

whether or not Florida's principle of equitable estoppel applies, since Lopez "consented" to

arbitration with third parties.  In support, Apple cites *Arellano v. T-Mobile USA, Inc.*, which

interpreted the same T-Mobile arbitration provision as "evinc[ing] an intent to include claims

against third parties."  2011 WL 1362165, at *6 (N.D. Cal. Apr. 11, 2011) (applying California

law).  This case does not purport to apply Florida law, and it is not persuasive under Florida law.

The plain terms of the T-Mobile arbitration provision contain nothing that would confer third

party beneficiary rights on Apple in these circumstances.  The T&Cs explain that the agreement

is between the customer and "T-Mobile USA, Inc.," and its "controlled subsidiaries, assignees,

and agents."  *See, e.g.*, Muzio Decl., Ex. I.  The provision states that "you and we" agree to

arbitrate "any and all claims or disputes in any way related to or concerning . . . our services,

devices or products."  *Id.* at 6.  The provision further explains that "[t]his includes any claims

against *other* parties relating to Services or Devices provided or billed to you (such as our suppliers, dealers, authorized retailers, or third party vendors) *whenever you also assert claims against us in the same proceeding*." *Id.* (emphasis added).  Here, Apple does not contend that it is one of T-Mobile's "controlled subsidiaries, assignees, and agents," and Lopez no longer asserts claims against T-Mobile.  Accordingly, because Florida's doctrine of equitable estoppel does not apply, Apple's motion to compel arbitration of Lopez's claims is denied.

## IV.   CONCLUSION

For the foregoing reasons, decision is RESERVED on Defendants' motions to compel arbitration of Ohanian's claims pending further proceedings, and Apple's motion to compel arbitration of Lopez's claims is DENIED.

By March 16, 2021, the parties shall meet and confer and file a joint letter explaining how they would like to proceed to resolve the factual issue.

The Clerk of Court is respectfully directed to close Dkt. No. 33.

SO ORDERED.

Dated: March 9, 2021
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

16