**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

TIGRAN OHANIAN and REGGE LOPEZ, individually and on behalf of all other persons similarly situated,

Plaintiffs,

v.

APPLE INC. and T-MOBILE USA, INC.,

Defendants.

Case No. 1:20-cv-05162-LGS

**DEFENDANT APPLE INC.'S MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION TO COMPEL ARBITRATION AS TO PLAINTIFF OHANIAN**

O'MELVENY & MYERS LLP
Hannah Y. Chanoine
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Matthew D. Powers (*pro hac vice*)

Kelsey M. Larson (*pro hac vice*)

*Attorneys for Defendant Apple Inc.*

# TABLE OF CONTENTS


Page

I. PRELIMINARY STATEMENT ..... 1

II. BACKGROUND ..... 3

A. Ohanian's Allegations ..... 3

B. The Arbitration Clause ..... 4

III. OHANIAN'S CLAIMS MUST BE ARBITRATED ..... 5

A. Ohanian Agreed to Arbitrate His Claims ..... 6

B. The Arbitration Agreement Covers Ohanian's Claims Against Apple ..... 7

IV. APPLE CAN ENFORCE THE ARBITRATION AGREEMENT ..... 8

V. THE CASE SHOULD BE STAYED PENDING COMPLETION OF ARBITRATION ..... 11

VI. CONCLUSION ..... 12

## TABLE OF AUTHORITIES

Page

**CASES**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)....................................................................................................6

*Arellano v. T-Mobile USA, Inc.*,
2011 WL 1362165 (N.D. Cal. Apr. 11, 2011)..............................................................7, 9, 11

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009)....................................................................................................2, 8

*Buckley v. Nat'l Football League*,
2018 WL 6198367 (S.D.N.Y. Nov. 16, 2018)..............................................................6, 7

*City of Almaty, Kazakhstan v. Sater*,
2019 WL 6681560 (S.D.N.Y. Dec. 6, 2019)................................................................2, 8

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
58 F.3d 16 (2d Cir. 1995)............................................................................................7

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....................................................................................................6

*Doe v. Trump Corp.*,
2020 WL 1808395 (S.D.N.Y. Apr. 8, 2020)...............................................................11

*Fieger v. Pitney Bowes Credit Corp.*,
251 F.3d 386 (2d Cir. 2001)........................................................................................8

*First Options v. Kaplan*,
514 U.S. 938 (1995)....................................................................................................8

*Getz v. Verizon Commc'ns Inc.*,
2018 WL 5276426 (S.D.N.Y. Oct. 24, 2018)..............................................................8

*Herskovic v. Verizon Wireless*,
2020 WL 1089601 (E.D.N.Y. Jan. 23, 2020), *report and recommendation adopted*, 2020 WL 1083716 (E.D.N.Y. Mar. 6, 2020)...................................................8

*Holick v. Cellular Sales of N.Y., LLC*,
802 F.3d 391 (2d Cir. 2015)........................................................................................6, 8

*In re A2P SMS Antitrust Litig.*,
972 F. Supp. 2d 465 (S.D.N.Y. 2013).........................................................................10

*In re Grand Theft Auto Video Game Consumer Litig.*,
251 F.R.D. 139 (S.D.N.Y. 2008)................................................................................9

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*John Hancock v. Wilson*,
254 F.3d 48 (2d Cir. 2001)........................................................................................ 9

*Johnston v. Electrum Partners LLC*,
2018 WL 3094918 (S.D.N.Y. June 21, 2018) ........................................................... 7

*Katz v. Cellco P'ship*,
794 F.3d 341 (2d Cir. 2015)................................................................................. 3, 11

*Lamps Plus, Inc. v. Varela*,
139 S. Ct. 1407 (2019).............................................................................................. 6

*Lismore v. Societe Generale Energy Corp.*,
2012 WL 3577833 (S.D.N.Y. Aug. 17, 2012)..................................................... 2, 10, 11

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
252 F.3d 218 (2d Cir. 2001)....................................................................................... 7

*Mehler v. Terminix Int'l Co.*,
205 F.3d 44 (2d Cir. 2000)......................................................................................... 7

*Meyer v. T-Mobile USA Inc.*,
836 F. Supp. 2d 994 (N.D. Cal. 2011) ....................................................................... 7

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)......................................................................................... 8

*Mohammad v. T-Mobile USA, Inc.*,
2018 WL 6249910 (E.D. Cal. Nov. 29, 2018)............................................................ 7

*Moore v. T-Mobile USA, Inc.*,
2012 WL 13036858 (E.D.N.Y. Sept. 28, 2012) ...................................................... 2, 7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983).................................................................................................. 3, 12

*Moss v. BMO Harris Bank, N.A.*,
24 F. Supp. 3d 281 (E.D.N.Y. 2014) ....................................................................... 10

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016)....................................................................................... 6

*Oldroyd v. Elmira Sav. Bank, FSB*,
134 F.3d 72 (2d Cir. 1998)......................................................................................... 6

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Ragone v. Atl. Video at Manhattan Ctr.*,
2008 WL 4058480 (S.D.N.Y. Aug. 29, 2008) .......... 10

*Shearson/Am. Express, Inc. v. McMahon*,
482 U.S. 220 (1987) .......... 6

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
542 F.3d 354 (2d Cir. 2008) .......... 11

*Whaley v. T-Mobile USA, Inc.*,
2013 WL 5155342 (E.D. Ky. Sept. 12, 2013) .......... 7

*Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*,
84 N.Y.2d 309 (1994) .......... 8

**STATUTES**

9 U.S.C. § 3 .......... 6, 11

9 U.S.C. § 4 .......... 6

9 U.S.C. §§ 1-16 .......... 5

General Business Law § 349 .......... 4

General Business Law § 350 .......... 4

Defendant Apple Inc. ("Apple") submits this memorandum of law in support of its renewed motion to compel arbitration as to Plaintiff Tigran Ohanian ("Ohanian"), and to stay this lawsuit pending arbitration of his claims.

## I. PRELIMINARY STATEMENT

All of Ohanian's claims in this case are subject to a binding arbitration agreement. In this putative class action, Ohanian alleges that Defendants Apple and T-Mobile USA, Inc. ("T-Mobile") committed "deceptive acts and practices" relating to certain iPhone users with T-Mobile SIM cards. (Compl. ¶ 1). Specifically, Ohanian contends that Apple and T-Mobile "fail[ed] to disclose" that, under certain conditions, iMessages and FaceTime calls made by T-Mobile users could be "improperly directed and accessed by third parties." (Compl. ¶¶ 3–5). This alleged problem, according to Ohanian, occurred only when consumers used *both* an iPhone's iMessage or FaceTime applications *and* a recycled T-Mobile phone number. (Compl. ¶¶ 4–5, 17, 32–34, 40–41, 44–46, 63–64, 71–72, 78). But when he accepted T-Mobile's Terms and Conditions (Compl. ¶¶ 55–57, 60–61),[1] Ohanian agreed to arbitrate "ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, DEVICES OR PRODUCTS . . . includ[ing] any claims against *other parties* relating to Services or Devices provided or billed to you (such as our suppliers, dealers, authorized retailers, or third party vendors) whenever you also assert claims against us in the same proceeding." (T&Cs (emphasis added)). As set forth in detail below, this Court should compel arbitration of Ohanian's claims against Apple because: (1) the arbitration agreement is valid and enforceable; (2) the agreement covers all of the claims

1 *See* Declaration of Christopher Muzio (Dkt. 32 ("Muzio Decl.")), Exhibits I, J, and K (T-Mobile Terms and Conditions ("T&Cs").)

brought by Ohanian, including the allegations involving Apple; and (3) the applicable state law entitles Apple, as a non-signatory, to enforce Ohanian's arbitration agreement.

***First***, the arbitration provision at issue is valid, enforceable, and binding. As explained in T-Mobile's renewed motion, Ohanian accepted the T&Cs, and courts have enforced this same arbitration provision in a number of other cases. *See, e.g.*, *Moore v. T-Mobile USA, Inc.*, 2012 WL 13036858, at *9 (E.D.N.Y. Sept. 28, 2012) (enforcing T-Mobile's arbitration agreement).

***Second***, Ohanian's claims fall within the scope of the arbitration agreement. The agreement is broad and applies to "ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, DEVICES OR PRODUCTS." (T&Cs). Here, Ohanian's claims all arise from allegedly misdirected iMessages and FaceTime calls made over T-Mobile's wireless network using "recycled" T-Mobile SIM cards, (Compl. ¶¶ 64, 72), and therefore necessarily "relate[ ] to" and "concern[ ]" T-Mobile's "services." (T&Cs).

***Third***, Apple can enforce T-Mobile's arbitration agreement against Ohanian. Here, the arbitration agreement Ohanian agreed to *explicitly* includes and applies to claims against third parties like Apple whenever a plaintiff sues them as part of the same proceeding as T-Mobile. (T&Cs). That is precisely what Ohanian has done here. And under New York law (which Ohanian contends applies here), a non-signatory may enforce an arbitration agreement where the "claims arise under the subject matter of the underlying agreement" and "there is a close relationship between" the signatory and non-signatory. *Lismore v. Societe Generale Energy Corp.*, 2012 WL 3577833, at *8 (S.D.N.Y. Aug. 17, 2012); *see also City of Almaty, Kazakhstan v. Sater*, 2019 WL 6681560, at *8 (S.D.N.Y. Dec. 6, 2019) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629–32 (2009)). That test is easily met: Ohanian's claims here all "arise

from" use of T-Mobile SIM cards. (*See, e.g.*, Compl. ¶¶ 32–34, 40, 64, 72). And there is a "close relationship" between Apple and T-Mobile because: (1) Ohanian purchased his T-Mobile SIM card specifically for use in his iPhone (Compl. ¶¶ 56–57, 61), (2) the claims here are only alleged to arise where customers use *both* Apple and T-Mobile products together (Compl. ¶¶ 56, 72), and (3) again, the arbitration agreement that Ohanian accepted applies on its face to claims against third parties like Apple. (T&Cs). Unlike Lopez, Ohanian is still asserting claims against both Apple and T-Mobile.

***Finally***, Apple also requests that the court stay this litigation pending arbitration of Ohanian's claims. "[A] mandatory stay is consistent with the FAA's underlying policy 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible[,]'" and would "enable [the] parties to proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation." *Katz v. Cellco P'ship*, 794 F.3d 341, 346 (2d Cir. 2015) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983)). Since the arbitration agreement covers all of the claims in this case, it would serve no valid purpose to continue litigation in this Court as to Ohanian pending completion of the arbitration.

## II. BACKGROUND

### A. Ohanian's Allegations

Ohanian alleges that Apple "fail[ed] to disclose" a "security flaw" that "allowed iMessage correspondence sent by iPhone users and FaceTime calls made by iPhone users to be improperly directed to and accessed by third parties" when an Apple ID was associated with a phone number linked to a recycled T-Mobile SIM card. (Compl. ¶¶ 3–5). As Ohanian acknowledges in his Complaint, this alleged "security flaw" occurred only with use of both iPhones and recycled T-Mobile SIM cards *together*. (*See, e.g.*, Compl. ¶ 34 ("[I]n order to send

iMessage correspondence or make a FaceTime call, the iPhone reads the iPhone user's phone number from the SIM card."); *see also* Compl. ¶¶ 4–5, 17, 40–41, 44–46, 63–64, 71–72, 78). Specifically, Ohanian alleges that Apple "allowed multiple unrelated Apple IDs of consumers that had purchased iPhones to coexist and to be associated with the same phone number, while T-Mobile compounded the problem by engaging in the deceptive SIM card practices" (Compl. ¶ 45), and that these actions caused "iMessage correspondence or FaceTime call[s to be] unknowingly and improperly misdirected to the prior owner of the phone number because of its previous association with the SIM card." (Compl. ¶ 41).

According to the Complaint, while he was in New York, Ohanian purchased a T-Mobile SIM card for use in an iPhone 6s. (Compl. ¶¶ 53–57, 59–61). Ohanian claims that he received messages meant for his co-plaintiff (Regge Lopez), who in turn complains that he never received other messages intended for him. (Compl. ¶¶ 64-65, 72). Ohanian contends that the alleged issue arose only after he installed his T-Mobile SIM card in his iPhone and then used the T-Mobile wireless network to access iMessage and FaceTime. (*See, e.g.*, Compl. ¶¶ 56, 72).

Based on these allegations, Ohanian brings claims under New York's consumer protection statutes (General Business Law §§ 349, 350), for fraudulent misrepresentation, and for unjust enrichment, and seeks to represent a class of "similarly situated individual consumers who (i) purchased one or more iPhones, or purchased one or more T-Mobile SIM cards for use in iPhones, during the Class Period; *and* (ii) utilized the iMessage and/or FaceTime features of the iPhones through the SIM Cards during the Class Period, by which they became victims of the pervasive data security breaches as alleged herein." (Compl. ¶ 17 (emphasis added)).

**B. <u>The Arbitration Clause</u>**

By purchasing a T-Mobile SIM card and activating T-Mobile's wireless network service for use in his iPhone (Compl. ¶¶ 55–57, 60–61), Ohanian accepted T-Mobile's T&Cs and agreed

to the arbitration clause therein.[2] As explained in detail in T-Mobile's concurrently-filed brief (and the accompanying declaration of Shane Sanders), Ohanian agreed to arbitrate "ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, DEVICES OR PRODUCTS," "includ[ing] any claims against ***other parties*** relating to Services or Devices provided or billed to you (such as our suppliers, dealers, authorized retailers, or third party vendors) ***whenever you also assert claims against us in the same proceeding***." (T&Cs (emphasis added)). The agreement defines "Services" as "T-Mobile services provided to you" and a "Device" as "[a]ny equipment for which we provide Service or which we provide to you to be used with our Service, such as a phone, handset, tablet, SIM card, or accessory." (T&Cs). It also provides that "[y]ou accept these T&Cs by doing any of the following things: giving us a written or electronic signature or confirmation, or telling us orally that you accept; activating, using or paying for the Service or a Device; or opening the Device box. If you don't want to accept these T&Cs, don't do any of these things." (T&Cs). Finally, the agreement has a choice of law provision, which states that it "is governed by the Federal Arbitration Act, applicable federal law, and the laws of the state or jurisdiction in which your billing address in our records is located, without regard to the conflicts of laws rules of that state or jurisdiction." (T&Cs). Ohanian did not timely opt out of his arbitration agreement or class action waiver. (Muzio Decl. ¶¶ 9, 16, 37).

## III. OHANIAN'S CLAIMS MUST BE ARBITRATED

Ohanian must arbitrate all the claims in the Complaint. The Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), establishes a "federal policy favoring arbitration," and requires that

[2] Rather than simply repeating portions of T-Mobile's brief, Apple incorporates by reference T-Mobile's renewed brief ("T-Mobile Brief") and the accompanying declaration of Shane Sanders ("Sanders Decl.").

courts "rigorously enforce agreements to arbitrate." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *see also Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232–33 (2013). In keeping with this policy, the Second Circuit "considers two factors when deciding if a dispute is arbitrable: '(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue.'" *Buckley v. Nat'l Football League*, 2018 WL 6198367, at *2 (S.D.N.Y. Nov. 16, 2018) (Schofield, J.) (quoting *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015)). And when an arbitration provision satisfies both conditions, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3 & 4); *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019) (emphasizing that the FAA "requires courts to enforce covered arbitration agreements according to their terms.").[3] Both conditions are satisfied here: Ohanian entered a valid and enforceable arbitration agreement that encompasses all of his claims.

**A. Ohanian Agreed to Arbitrate His Claims**

As set forth in detail in the T-Mobile Brief, Ohanian entered into a valid arbitration agreement in April 2016 when he purchased his T-Mobile SIM cards and activated his lines of service with T-Mobile. (T-Mobile Brief at Section II.A.1; Sanders Decl. at ¶ 4). Ohanian entered into his arbitration agreement when he received his receipt and pre-paid service form. *Id.*; *see also* Anderson Dep. at 33:16-19; 33:22-34:2; 47:17-21; 63:5-11. There is also no

[3] The FAA reflects the "strong federal policy favoring arbitration as an alternative means of dispute resolution." *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998); *see also Buckley*, 2018 WL 6198367, at *2 (Schofield, J.) (reasoning that the FAA "embodies a national policy favoring arbitration") (citing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 228 (2d Cir. 2016)).

question that the agreement at issue here is valid and enforceable. Multiple courts, including in this Circuit, have enforced the same T-Mobile agreement that is at issue here. *See, e.g.*, *Moore*, 2012 WL 13036858, at *9 (New York law); *Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994, 1004 (N.D. Cal. 2011) (California law); *Arellano v. T-Mobile USA, Inc.*, 2011 WL 1362165, at *3–6 (N.D. Cal. Apr. 11, 2011) (same); *Mohammad v. T-Mobile USA, Inc.*, 2018 WL 6249910, at *7 (E.D. Cal. Nov. 29, 2018) (same); *Whaley v. T-Mobile USA, Inc.*, 2013 WL 5155342, at *2 (E.D. Ky. Sept. 12, 2013) (Kentucky law).

### B. The Arbitration Agreement Covers Ohanian's Claims Against Apple

Next, the arbitration agreement applies to Ohanian's claims in the Complaint. The pertinent clause covers "ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, DEVICES OR PRODUCTS." (T&Cs).[4] And here, all of Ohanian's claims, including those against Apple, necessarily hinge on Ohanian's use of a T-Mobile SIM card on T-Mobile's network—services specifically addressed by the arbitration agreement. (*See* Compl. ¶¶ 4–5, 7, 17, 32–34, 40–41, 44–46, 63–64, 71–72, 78).[5] Ohanian's allegations therefore "relate[ ] to" and

---

4 This type of broad agreement "creates a presumption of arbitrability," *Buckley*, 2018 WL 6198367, at *3 (Schofield, J.), and evinces an "inten[tion for] all issues that 'touch matters' within the main agreement to be arbitrated." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 225 (2d Cir. 2001). *See, e.g.*, *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (an arbitration clause covering "any claim or controversy arising out of or relating to the agreement" is "the paradigm of a broad clause") (brackets omitted). *See also Johnston v. Electrum Partners LLC*, 2018 WL 3094918, at *10 (S.D.N.Y. June 21, 2018) ("The arbitration provision at issue here, which encompasses 'any and all controversies or claims arising out of or relating to [the] Agreement' . . . is 'classically broad.'" (alteration in original) (citing *Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 49 (2d Cir. 2000))).

5 T-Mobile's arbitration agreement also specifically encompasses claims brought against "other parties" (*e.g.*, Apple) "relating to Services or Devices provided . . . to [Plaintiffs]" (here, iPhones using T-Mobile SIM cards and T-Mobile wireless network) "whenever [Plaintiffs] also assert claims against [T-Mobile] in the same proceeding." (T&Cs).

"concern[ ]" T-Mobile's "services, devices [and] products." (T&Cs). *See, e.g.*, *Getz v. Verizon Commc'ns Inc.*, 2018 WL 5276426, at *3 (S.D.N.Y. Oct. 24, 2018) ("the Arbitration Clause cover[ing], in part, 'any dispute that in any way relates to or arises . . . from any equipment, products and services you receive from [Verizon]' . . . is sufficiently broad to create a strong presumption of arbitrability"); *see also Herskovic v. Verizon Wireless*, 2020 WL 1089601, at *3 (E.D.N.Y. Jan. 23, 2020), *report and recommendation adopted*, 2020 WL 1083716 (E.D.N.Y. Mar. 6, 2020) (same); *Holick*, 802 F.3d at 395 ("If the allegations underlying the claims touch matters covered by the parties' . . . agreements, then those claims must be arbitrated, whatever the legal labels attached to them.").

## IV. APPLE CAN ENFORCE THE ARBITRATION AGREEMENT

Apple is also entitled to enforce the agreement's terms. Here, the T&Cs are explicit that Ohanian must arbitrate claims against "other parties" (like Apple) "relating to Services or Devices provided . . . to [Plaintiffs]" (here, T-Mobile SIM cards and the T-Mobile wireless network) "whenever [Plaintiffs] also assert claims against [T-Mobile] in the same proceeding." (T&Cs). And under the FAA, a non-signatory to an arbitration agreement is entitled to invoke that agreement's protections as long as state contract law allows it. *City of Almaty, Kazakhstan v. Sater*, 2019 WL 6681560, at *8 (S.D.N.Y. Dec. 6, 2019) (citing *Arthur Andersen*, 556 U.S. at 629-32). And here, the state at issue—New York—allows Apple to enforce T-Mobile's clause.[6]

---

[6] New York principles of contract construction govern the agreements at issue here. *First Options v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) ("State law principles of contract formation govern the arbitrability question."). Since Ohanian did not provide T-Mobile with a United States billing address, the court "must apply the law of the forum state to determine the choice-of-law." *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001). Under New York's test, courts consider five factors: (1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile of the contracting parties. *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 317–18 (1994). Here, the first four factors point to New York, where Ohanian

First, the plain language of the agreement requires Ohanian to arbitrate his claims with a third party smartphone manufacturer like Apple. "Courts must interpret an arbitration provision to give effect to the parties' intent as expressed by the plain language of the provision." *John Hancock v. Wilson*, 254 F.3d 48, 58 (2d Cir. 2001) (applying New York contract law). And here, the T&Cs themselves make clear that the agreement extends to non-signatories: arbitration includes "any *claims against other parties* relating to Services or Devices provided or billed to you (such as our suppliers, dealers, authorized retailers, or third party vendors) whenever you also assert claims against us in the same proceeding." (T&Cs (emphasis added).) The court in *Arellano* addressed this same language—and held that it required compelling arbitration between the plaintiff and HTC, "a supplier and third-party vendor of T-Mobile." 2011 WL 1362165, at *6. The same result is warranted here, where there is no question that T-Mobile sells iPhones and other Apple products. In short, "the plain meaning of [T-Mobile's] arbitration agreement evinces an intent to include claims against third parties," including cell phone manufacturers like Apple. *Id*. (T-Mobile's clause applied to claims against cell phone provider HTC).

Ohanian's claims are situated differently than those of Plaintiff Lopez as to arbitration. After T-Mobile and Apple filed their original motions to compel arbitration in September 2020 (Docs. 31, 34), Lopez dismissed his claims against T-Mobile. While there was no dispute that Lopez had agreed to arbitrate with T-Mobile, by dismissing his claims as to T-Mobile, Lopez argued that the arbitration provision should not apply to Apple. Specifically, Lopez argued that

---

purchased his T-Mobile SIM card and activated his T-Mobile account. *See In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 149 (S.D.N.Y. 2008) ("the first, second, third, and fourth factors clearly favor the application of the law of the state of purchase, for that is the situs of the parties' contracting, negotiation, and performance on the sales contract for [the product at issue], and the location of the subject matter of that sales contract."). Even though Ohanian resides in Russia, given that all of the other factors point to New York, his domicile is not determinative. Thus, on the facts pleaded in the Complaint, New York is the "center of gravity" for Ohanian's contract with T-Mobile.

without a claim against T-Mobile, the plain language of the agreement—extending arbitration to third parties "whenever you also assert claims against us in the same proceeding"—no longer applied. In its March 9, 2021 Order, this Court relied on this fact in finding that *Arellano* was not persuasive as to Lopez's claims against Apple: "Lopez no longer asserts claims against T-Mobile." Order at 15–16. But the same is not true of Ohanian, who continues to assert claims against both Apple and T-Mobile "in the same proceeding."

Second, a non-signatory can also enforce an arbitration agreement under New York law where (1) "the signatory's claims arise under the subject matter of the underlying agreement," and (2) "there is a close relationship between the signatory and the non-signatory party." *Lismore*, 2012 WL 3577833, at *8.[7] Ohanian's claims against Apple meet this test. As explained above, his claims "arise under the subject matter" of T-Mobile's T&Cs—Ohanian's alleged injuries all depend on his use of T-Mobile SIM cards. (*See* T&Cs; Compl. ¶¶ 4–5, 17, 32–34, 40–41, 44–46, 63–64, 71–72, 78).[8] And the relationship between the signatory (T-Mobile) and Apple is more than sufficient to meet New York's requirements. Under New York law, the key question is whether there is "a relationship among the parties which . . . support[s] the conclusion that [the signatory] had consented to extend its agreement to the

---

7 The equitable estoppel test under New York law is different than that under Florida law. *See* Order at 12 (equitable estoppel applies under Florida law when "each of the signatory's claims against a non-signatory make reference to or presume the existence of a written agreement" or where the claims allege "substantially interdependent and concerned misconduct" by the signatory and non-signatory).

8 *See Moss v. BMO Harris Bank, N.A.*, 24 F. Supp. 3d 281, 289 (E.D.N.Y. 2014) ("plaintiffs' claims do arise from the same subject matter as the . . . agreements, in no small part because the putative class 'is premised upon the relationships entered into through the . . . Agreement and is a status only conferred to those who have assented to the terms of that agreement.'") (quoting *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 477 (S.D.N.Y. 2013)); *Ragone v. Atl. Video at Manhattan Ctr.*, 2008 WL 4058480, at *8 (S.D.N.Y. Aug. 29, 2008) (workplace sexual harassment claims fell under the subject matter of arbitration agreement that covered "any and all claims or controversies arising out of the employee's employment").

[non-signatory]." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2d Cir. 2008). Here, the T&Cs *explicitly* state that Ohanian must arbitrate claims against "other parties" such as Apple. Ohanian also bought his T-Mobile SIM cards specifically for use in an Apple iPhone (Compl. ¶¶ 56–57, 61) and his claims only arise because he used Apple and T-Mobile's products together. (*See, e.g.*, Compl. ¶ 56); *id.* ¶ 72).

On these facts, the relationship between Apple and T-Mobile is more than sufficient to allow Apple to enforce T-Mobile's clause. *See Lismore*, 2012 WL 3577833, at *8 (compelling arbitration where the agreement "implicitly" recognized the possibility of arbitration with non-signatories); *Arellano*, 2011 WL 1362165, at *6 (allowing non-signatory phone manufacturer HTC to enforce T-Mobile's arbitration agreement).[9]

## V. <u>THE CASE SHOULD BE STAYED PENDING COMPLETION OF ARBITRATION</u>

Finally, the Court should stay litigation of Ohanian's claims pending completion of the arbitration proceedings. Section 3 of the FAA requires such a stay, *see* 9 U.S.C. § 3 ("the court in which such suit is pending . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . ."), and there is no practical or other reason for this case to continue in light of the parties' binding arbitration agreement. *See Katz*, 794 F.3d at 346 ("a mandatory stay is consistent with the FAA's underlying policy" and "enables parties to

[9] By contrast, in *Doe v. Trump Corp.*, this Court found that the underlying arbitration agreement did not contemplate arbitration with third parties, and the relationship between the non-signatory defendants and the non-party was not known to plaintiffs. 2020 WL 1808395, at *5 (S.D.N.Y. Apr. 8, 2020) (Schofield, J.). Here, the agreement explicitly applies to claims against third parties, and the relationship between T-Mobile and Apple was known to Ohanian—he bought his SIM card specifically to use in his Apple iPhone and sued both Appl. Ohanian is aware of the relationship between Apple and T-Mobile, given that he purchased his SIM card specifically for use in his Apple device and sued both Apple and T-Mobile together.

proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation.") (quoting *Moses H. Cone*, 460 U.S. at 22).

## VI. CONCLUSION

For these reasons, Apple requests that the Court compel Ohanian to arbitrate his claims against Apple and T-Mobile.

Dated: New York, New York
July 14, 2021

Respectfully submitted,

O'MELVENY & MYERS LLP

By: */s/ Hannah Y. Chanoine*

Hannah Y. Chanoine
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Matthew D. Powers (*pro hac vice*)
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Kelsey M. Larson (*pro hac vice*)
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

*Attorneys for Defendant*
*Apple Inc.*