**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TIGRAN OHANIAN, INDIVIDUALLY
AND ON BEHALF OF ALL OTHER
PERSONS SIMILARLY SITUATED,
AND REGGE LOPEZ, INDIVIDUALLY
AND ON BEHALF OF ALL OTHER
PERSONS SIMILARLY SITUATED,

                       Plaintiffs,

v.

APPLE INC. AND T-MOBILE USA, INC.
                    Defendants.

Case No. 1:20-cv-05162 (LGS)

### MEMORANDUM OF LAW IN SUPPORT OF T-MOBILE USA, INC.'S <u>MOTION TO DISMISS AMENDED COMPLAINT</u>

Brett D. Jaffe
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016
Tel:  (212) 210-9547
brett.jaffe@alston.com

Nathaniel R. Lee
(*Pro Hac Vice*)
**ALSTON & BIRD LLP**
Chase Tower
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Tel:  (214) 922-3400
nathan.lee@alston.com

Kristine M. Brown
(*Pro Hac Vice*)
Derin B. Dickerson
(*Pro Hac Vice*)
**ALSTON & BIRD LLP**
1201 W Peachtree Street
Suite 4900
Atlanta GA 30309
Tel:  (404) 881-7000
kristy.brown@alston.com
derin.dickerson@alston.com

*Attorneys for Defendant*
*T-Mobile USA, Inc.*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 3

LEGAL STANDARD ................................................................................................... 4

ARGUMENT ................................................................................................................ 5

    I.     Ohanian's NY GBL Claims Fail as a Matter of Law............................................. 5

        A.    Ohanian Does Not Allege that T-Mobile had Knowledge of the Alleged iOS Security Defect.................................................................... 5

            1.    Ohanian is estopped from alleging that T-Mobile knew about the iOS defect.............................................................. 6

            2.    The Amended Complaint Does Not Allege T-Mobile's Knowledge of the Alleged Defect................................... 7

        B.    Reassigning Abandoned Phone Numbers is Explicitly Required by Federal Regulations and Cannot Form the Basis of a NY GBL Claim.......................................................................................... 11

        C.    Ohanian Does Not Allege the Existence of any Advertisement that Could Support a Claim Under NY GBL § 350........................................ 13

        D.    Ohanian Does Not Allege he was Actually Injured by T-Mobile's Alleged Conduct. ..................................................................... 14

    II.    Ohanian's Fraudulent Misrepresentation claim fails as a matter of law............... 16

        A.    The Amended Complaint Does Not Plead Fraud with Particularity as Required by Fed. R. Civ. P. 9(b). ........................................ 16

        B.    T-Mobile is Not Alleged to Have Been Aware of the iOS Defect. .......... 17

        C.    T-Mobile Did Not Have a Duty to Disclose the Alleged iOS Defect........................................................................................... 18

        D.    Ohanian Does Not Allege an Actionable Injury. ...................................... 19

    III.    Ohanian's Unjust Enrichment Claim fails as a matter of law.............................. 20

        A.    Ohanian's Unjust Enrichment Claim is Duplicative of His Other Claims. ........................................................................................ 20

        B.    The Amended Complaint Does Not Plead Unjust Enrichment with the Particularity Required by Fed. R. Civ. P. 9(b)................................... 21

    IV.    Ohanian's GBL and Unjust Enrichment Claims are time-barred. ........................ 22

    V.    NY GBL Sections 349 and 350 Do Not Apply to Transactions That occurred Outside of New York. .......................................................................... 25

CONCLUSION.............................................................................................................. 25

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Home Prods. Corp. v. Johnson & Johnson*,
   672 F. Supp. 135 (S.D.N.Y. 1987) .......................................................................12

*AmTrust N. Am., Inc. v. Safebuilt Ins. Servs.*,
   No. 16-cv-6033 (CM), 2016 U.S. Dist. LEXIS 153399 (S.D.N.Y. 2016)..............................23

*Anunziatta v. Orkin Exterminating Co., Inc.*,
   180 F. Supp. 2d 353 (N.D.N.Y. 2001).......................................................................13, 14

*ATSI Communs., Inc. v. Shaar Fund, Ltd.*,
   357 F. Supp. 2d 712 (S.D.N.Y. 2005).......................................................................25

*Belcastro v. Burberry Ltd.*,
   No. 16-CV-1080 (VEC), 2017 U.S. Dist. LEXIS 26296 (S.D.N.Y. 2017) ...........................19

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).......................................................................4

*Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
   448 F.3d 573 (2d Cir. 2006).......................................................................21

*Bildstein v. MasterCard Int'l Inc.*,
   329 F. Supp. 2d 410 (S.D.N.Y. 2004).......................................................................14, 15

*Bristol Vill., Inc. v. Louisiana-Pacific Corp.*,
   170 F. Supp. 3d 488 (W.D.N.Y. 2016) .......................................................................23

*Burian v. Kurtz*,
   No. 85 Civ. 9223 (KTD), 1990 U.S. Dist. LEXIS 6411 (S.D.N.Y. 1990) ...........................18

*Bytemark, Inc. v. Xerox Corp.*,
   342 F. Supp. 3d 496 (S.D.N.Y. 2018).......................................................................20

*Cayuga Indian Nation v. Seneca Cty.*,
   260 F. Supp. 3d 290 (W.D.N.Y. 2017).......................................................................7

*Canestaro v. Raymour & Flanigan Furniture Co.*,
   42 Misc. 3d 1210(A), 984 N.Y.S.2d 630 (Sup. Ct. Erie Cnty. 2013).......................................13

*City of Almaty v. Ablyazov*,
   No. 15-CV-5345 (AJN), 2018 U.S. Dist. LEXIS 50782 (S.D.N.Y. 2018).............................24

*Cohen v. Dunne*,
   2017 U.S. Dist. LEXIS 160165 (S.D.N.Y. 2017)...................................................22

*Colella v. Atkins Nutritionals, Inc.*,
   348 F. Supp. 3d 120 (E.D.N.Y. 2018) ...................................................................12

*Coppelson v. Serhant*,
   No. 19-cv-8481 (LJL), 2021 U.S. Dist. LEXIS 120125 (S.D.N.Y. 2021) ............21

*Craig v. Bank of N.Y. Mellon Corp.*,
   No. 10-CV-4438 (SLT) (RML), 2012 U.S. Dist. LEXIS 40286 (E.D.N.Y.
   Mar. 23, 2012)........................................................................................................16

*Cummings v. FCA US LLC*,
   401 F. Supp. 3d 288 (N.D.N.Y. 2019)..............................................................5, 11

*Demirovic v. Ortega*,
   No. 15 CV 327 (CLP), 2017 U.S. Dist. LEXIS 230230 (E.D.N.Y. 2017) ............22

*Diaz v. Paragon Motors of Woodside, Inc*.,
   424 F. Supp. 2d 519 (E.D.N.Y. 2006) ...................................................................12

*Dixon v. von Blanckensee*,
   994 F.3d 95 (2d Cir. 2021)........................................................................................4

*DuBuisson v. Nat'l Union Fire Ins. of Pittsburgh, P.A.*,
   2021 U.S. Dist. LEXIS 138918 (S.D.N.Y. 2021)..................................................24

*Eidelman v. Sun Prods. Corp.*,
   No. 16-cv-3914 (NSR), 2021 U.S. Dist. LEXIS 60976 (S.D.N.Y. Mar. 30,
   2021) ......................................................................................................................14

*Everlast World's Boxing Headquarters Corp. v. Trident Brands Inc*.,
   No. 19-CV-503 (JMF), 2020 U.S. Dist. LEXIS 33266 (S.D.N.Y. Feb. 26,
   2020) ......................................................................................................................19

*First Hill Partners, LLC v. Bluecrest Capital Mgmt.*,
   52 F. Supp. 3d 625 (S.D.N.Y. 2014)................................................................18, 19

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
   774 N.E. 2d 1190 (N.Y. 2002).................................................................................25

*Gould v. Helen of Troy, Ltd*.,
   2017 U.S. Dist. LEXIS 54611 (S.D.N.Y. 2017).................................................23, 24

*Green v. Covidien LP*,
   2019 U.S. Dist. LEXIS 148514 (S.D.N.Y. 2019)...................................................20

iii

*In re Ford Fusion & C-Max Fuel Econ. Litig.*,
   No. 13-MD-2450 (KMK), 2015 U.S. Dist. LEXIS 155383 (S.D.N.Y. 2015) ........................21

*In re Sling Media Slingbox Advert. Litig.*,
   202 F. Supp. 3d 352 (S.D.N.Y. 2016) ...........................................................................5, 6, 11

*Innovative Custom Brands, Inc. v. Minor*,
   No. 15-CV-2955 (AJN), 2016 U.S. Dist. LEXIS 8354 (S.D.N.Y. 2016)...................20, 21, 22

*Iqbal v. Ashcroft*,
   129 S. Ct. 1937 (2009) ...........................................................................................................4, 9

*Kampuries v. Am. Honda Motor Co.*,
   204 F. Supp. 3d 484 (E.D.N.Y. 2016) ....................................................................................17

*Lane v. Fein, Such & Crane, LLP*,
   767 F. Supp. 2d 382 (E.D.N.Y. 2011) ....................................................................................15

*Lia v. Saporito*,
   541 F. App'x 71 (2d Cir. 2013) ............................................................................................6, 7

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11 MDL 2262 (NRB), 2015 U.S. Dist. LEXIS 149629 (S.D.N.Y. Nov. 3,
   2015) ........................................................................................................................................24

*Marcus v. AT & T Corp.*,
   938 F. Supp. 1158 (S.D.N.Y. 1996)...........................................................................5, 12, 13

*Mira v. Kingston*,
   218 F. Supp. 3d 229 (S.D.N.Y. 2016).......................................................................................8

*Morales v. Kimberly-Clark Corp.*,
   No. 18-cv-7401 (NSR), 2020 U.S. Dist. LEXIS 93307 (S.D.N.Y. 2020) ...............................9

*Quiroz v. Beaverton Foods, Inc.*,
   No. 17-CV-7348 (NGG) (JO), 2019 U.S. Dist. LEXIS 57313 (E.D.N.Y. Mar.
   31, 2019) .................................................................................................................................16

*Regnante v. Sec. & Exch. Officials*,
   134 F. Supp. 3d 749 (S.D.N.Y. 2015).....................................................................................22

*Roth v. CitiMortgage, Inc.*,
   2013 U.S. Dist. LEXIS 131861 (E.D.N.Y. 2013).....................................................................15

*Samuel v. Time Warner, Inc.*,
   2005 NY Slip Op 25451 (Sup. Ct.)...................................................................................12, 13

*Schwartz v. Michaels*,
   91 Civ. 3538 (RPP), 1992 U.S. Dist. LEXIS 11321 (S.D.N.Y. 1992) ...................................18

*Scott v. City of White Plains*,
   2012 U.S. Dist. LEXIS 53212 (S.D.N.Y. 2012) ........................................................................23

*Sedona Corp. v. Ladenburg Thalmann & Co.*,
   2011 U.S. Dist. LEXIS 105320 (S.D.N.Y. 2011) .....................................................................17

*Sheahan v. CBS Inc.*,
   No. 92 Civ. 6197 (SS), 1994 U.S. Dist. LEXIS 2623 (S.D.N.Y. Mar. 8, 1994) ..............19, 20

*Stadnick v. Lima*,
   861 F.3d 31 (2d Cir. 2017)........................................................................................................14

*Thakoopersaud v. Nat'l City Bank*,
   No. 12-CV-3096 (CBA) (VMS), 2013 U.S. Dist. LEXIS 208280 (E.D.N.Y.
   2013) ..........................................................................................................................................22

*Tomassini v. FCA US LLC*,
   No. 3:14-CV-1226 (MAD/ML), 2020 U.S. Dist. LEXIS 70683 (N.D.N.Y.
   2020) ..........................................................................................................................................23

*United States Fid. & Guar. Co. v. Petroleo Brasileiro S.A.*,
   98 Civ. 3099 (JGK), 2001 U.S. Dist. LEXIS 3349 (S.D.N.Y. 2001) ....................................6, 7

*Welch v. TD Ameritrade Holding Corp.*,
   2009 U.S. Dist. LEXIS 65584 (S.D.N.Y. 2009) .......................................................................21

*Williams v. Dow Chem. Co.*,
   No. 01-Civ.-4307, 2004 U.S. Dist. LEXIS 10940 (S.D.N.Y. 2004).........................................22

*Womack v. Capital Stack, LLC*,
   No. 18 Civ. 4192, 2019 WL 2277835 (E.D.N.Y. May 18, 2018) ............................................17

*Wurtzburger v. Ky. Fried Chicken*,
   No. 16-cv-08186 (NSR), 2017 U.S. Dist. LEXIS 205881 (S.D.N.Y. 2017) ...........................12

*Wynn v. Topco Assocs., LLC*,
   No. 19-CV-11104 (RA), 2021 U.S. Dist. LEXIS 9714 (S.D.N.Y. 2021)..................................14

*Yamashita v. Scholastic Inc.*,
   936 F.3d 98 (2d Cir. 2019)........................................................................................................10

*Zottola v. Eisai Inc.*,
   No. 20-CV-02600 (PMH), 2021 U.S. Dist. LEXIS 187098 (S.D.N.Y. 2021) .........................14

## RULES

NY CLS CPLR § 214(2) ..............................................................................................22

Fed. R. Civ. P. 9(b) ........................................................................................... passim

Fed. R. Civ. P. 12(b)(6)......................................................................................4, 10

## STATUTES

N.Y. G.B.L. § 349........................................................................................... passim

N.Y. G.B.L. § 350........................................................................................... passim

## OTHER AUTHORITIES

47 C.F.R. § 52.15 .......................................................................................5, 12, 13

*In re Advanced Methods to Target & Eliminate Unlawful Robocalls*,
    33 FCC Rcd 12024, 2018 FCC LEXIS 3442 (F.C.C. December 13, 2018)............12

*In re Telephone Number Portability Numbering Resource Optimization*, 35 FCC
    Rcd 10432, 10432, 2020 FCC LEXIS 3625 ..........................................................13

## PRELIMINARY STATEMENT

Plaintiff Tigran Ohanian's ("Ohanian")[1] newly-Amended Class Action Complaint (the "Amended Complaint") fails to assert a single viable cause of action against Defendant T-Mobile USA, Inc. ("T-Mobile"), and should be dismissed with prejudice.  In 2016, while on vacation in the United States, Ohanian visited a T-Mobile store and purchased thirty days-worth of pre-paid cellular service to use on an Apple iPhone he already owned.  He used that T-Mobile cellular service for the duration of his two-week trip, and then ceased using T-Mobile cellular service. Ohanian alleges that, sometime later, T-Mobile recycled his old phone number—as required by federal law—without requiring him to manually disassociate his Apple ID, and as a result, Ohanian received iMessage and FaceTime communications intended for Plaintiff Regge Lopez ("Lopez").

The crux of Ohanian's Amended Complaint is that T-Mobile failed to disclose that as a result of an alleged defect in Apple Inc.'s ("Apple") iOS operating system, the recycling of T-Mobile telephone numbers could result in customers' personal data and communications being compromised.  But the Amended Complaint does not contain any plausible, non-conclusory allegations from which to infer that T-Mobile knew anything about Apple's alleged defect.  Nor does Ohanian allege that his iMessage or FaceTime communications were viewed by anyone else or that his personal data was compromised in any way.  On these spare factual allegations, Ohanian purports to assert claims for (i) violations of NY GBL §§ 349 and 350, (ii) fraudulent misrepresentation, and (iii) unjust enrichment.

Critically, each of Ohanian's claims rests entirely on the premise that T-Mobile failed to disclose the existence of a flaw in Apple's iOS operating system that could cause a consumer's

---

[1]   Plaintiff Regge Lopez voluntarily dismissed his claims against T-Mobile. *See* Notice of Voluntary Dismissal Without Prejudice [Dkt. 44].  Accordingly, this Motion is directed only at the claims Ohanian asserts against T-Mobile.

personal information and communications to be compromised.  But the Amended Complaint does not contain a single non-conclusory allegation that T-Mobile had any knowledge of that defect. Notably, Ohanian alleged in the original Complaint that the alleged defect was "known only to Apple" (Class Action Complaint ¶ 3 [Dkt. 1] ("Compl.")).  Indeed, Ohanian's co-Plaintiff, Lopez, even relied on allegations of Apple's exclusive knowledge in successfully opposing Apple's motion to dismiss with respect to his GBL claim.  Dkt. 87.  Now, in a transparent effort to avoid dismissal, Ohanian conveniently flips that fundamental allegation on its head and alleges in conclusory fashion that T-Mobile – and not just Apple – knew about the alleged defect.  But Plaintiffs are estopped from relying on allegations of Apple's exclusive knowledge when it served their interests in their case against Apple and now disavowing those same allegations when strategically helpful to their case against T-Mobile.  In any event, the Amended Complaint contains no plausible, non-conclusory allegation from which to infer T-Mobile's knowledge of Apple's alleged defect.  Accordingly, T-Mobile cannot be liable on an omissions theory for failing to disclose the risks of Apple's alleged defect, and each of Ohanian's claims should be dismissed. *See infra,* Section I.A).

Beyond this fundamental and dispositive failing, the Amended Complaint is deficient in numerous other ways, each of which requires dismissal.  Among other failings, the Amended Complaint:

- Purports to assert claims under the NY GBL challenging T-Mobile's practice of recycling abandoned telephone numbers, but Federal Communications Commission ("FCC") regulations requiring T-Mobile to do that very thing are an absolute defense to Ohanian's claims (*infra,* Section I.B);

- Fails to identify a single T-Mobile advertisement that could form the basis of a false advertising claim under NY GBL § 350 (*infra,* Section I.C);

- Fails to allege any actual injury suffered by Ohanian, and conflates injuries allegedly suffered only by Plaintiff Lopez, who no longer asserts any claims

against T-Mobile (*infra,* Sections I.D, II.D);

- Fails to plead fraudulent misrepresentation or unjust enrichment with the particularity required by Fed. R. Civ. P. 9(b) (*infra,* Sections II.A, III.B);

- Purports to assert claims under the NY GBL and for fraudulent misrepresentation that accrued in 2016 and are thus barred by New York's three-year statute of limitations (*infra,* Section IV);

- Purports to assert an unjust enrichment claim that is entirely duplicative of Ohanian's other claims, requiring dismissal for the same reason this Court dismissed Plaintiff Lopez's identical unjust enrichment claim against Apple (*infra,* Section III.A).

Moreover, to the extent Ohanian's Amended Complaint is not dismissed outright – and it should be – the putative class he purports to represent must be significantly narrowed.  As this Court recognized in this case, NY GBL claims may only be brought on behalf of consumers who transacted in New York.  Opinion and Order at 6 [Dkt. 107].  Thus, as this Court did with regard to Lopez, Ohanian's class claims must be dismissed to the extent they relate to non-New York transactions.

For these reasons, and others as set forth more fully below, the Court should dismiss Ohanian's claims asserted against T-Mobile.  And because Ohanian has already amended his Complaint to address the arguments on which T-Mobile bases this motion, his Amended Complaint should be dismissed *with prejudice.*

## STATEMENT OF FACTS

Ohanian's claims are based on an alleged security flaw in Apple's iOS system related to Apple's proprietary FaceTime calls and iMessage features on the Apple iPhone.  *See* Am. Compl. ¶ 39.  Ohanian purchased a SIM card from T-Mobile and activated a line of service that he used with his iPhone 6s.  *See id.* ¶ 53-55.  Ohanian stopped using the phone number assigned by T-Mobile, and sometime later, Lopez activated a line of service with T-Mobile.  *Id.* ¶¶ 57, 59-60.  Lopez was assigned the same phone number that was previously assigned to Ohanian.  *Id.* ¶ 62.

Because Ohanian did not manually disassociate his Apple ID from that number, he began receiving iMessages and Facetime calls that were intended for Lopez. *Id.* ¶¶ 63-64. The Amended Complaint alleges that Apple took deliberate steps to conceal the existence of the problem. *Id.* ¶¶ 81-86. Finally, the Amended Complaint alleges that in 2018, Apple fixed this security issue by releasing iOS 12. *Id.* ¶¶ 6, 83. Ohanian does not allege that any of his personal information was accessed by a third party or that any Facetime calls or iMessages intended for Ohanian were received or accessed by anyone.

Based on the foregoing allegations, Ohanian asserts four causes of action against T-Mobile: (i) Violation of NY GBL § 349; (ii) Violation of NY GBL § 350; (iii) fraudulent misrepresentation; and (iv) unjust enrichment.

## LEGAL STANDARD

When considering a Rule 12(b)(6) motion, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level" and must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Iqbal v. Ashcroft*, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949; *see also Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (court does not consider "conclusory allegations or legal conclusions couched as factual allegations."). If the complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950. However, "plausibility" requires more than "mere[] consisten[cy] with" wrongful conduct. *Id*. at 1949 (internal quotation marks and citation omitted). Claims are deemed to have "facial plausibility" only if the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949 (emphasis added).

<u>**ARGUMENT**</u>

I.  <u>**OHANIAN'S NY GBL CLAIMS FAIL AS A MATTER OF LAW.**</u>

To state a claim for violation of NY GBL §349 and §350, "a plaintiff must allege that: (1) the act or practice is deceptive or misleading in a material respect, and (2) that plaintiff has been injured as a result." *Marcus v. AT&T Corp.*, 938 F. Supp. 1158, 1173 (S.D.N.Y. 1996). Ohanian's NY GBL claims are defective for four independent reasons. ***First***, Ohanian fails to plausibly allege that T-Mobile had any knowledge of the alleged iOS defect at the heart of his claim, which as a matter of law precludes any NY GBL claim against T-Mobile. ***Second***, the NY GBL expressly precludes liability for conduct that is subject to and complies with the rules and regulations of a federal agency. T-Mobile's alleged conduct here—recycling phone numbers that are no longer in use—is not only permitted by FCC regulations, it is required by them. *See* 47 C.F.R. § 52.15(f)(ii). ***Third***, Ohanian fails to identify a single T-Mobile advertisement that he contends is false or misleading as required to assert a claim under NY GBL § 350. ***Fourth***, Ohanian does not allege that his privacy or confidential personal information was compromised, and thus, he has not been injured as a result of T-Mobile's alleged conduct. Each of these reasons requires dismissal of Ohanian's NY GBL claims against T-Mobile.

A.  <u>**Ohanian Does Not Allege that T-Mobile had Knowledge of the Alleged iOS Security Defect.**</u>

Unlike Lopez's claims against Apple, Ohanian's NY GBL claims against T-Mobile are not based on affirmative misrepresentations but solely on alleged omissions. *Compare Am.* Compl. ¶¶ 96 and 111 *with* Am. Compl. ¶¶ 124, 135. The "key" to an omission-based NY GBL §§ 349 or 350 claim "is that the defendant 'possess' the information that the plaintiff claims it improperly withheld." *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016) (dismissing §349 claim); *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 309 (N.D.N.Y. 2019)

(dismissing §§ 349 and 350 omission claims).  Thus, "plaintiffs pursuing an omission-based claim must 'plausibly allege that the defendants *had knowledge* of the material information and failed to disclose or actively concealed such information.'"  *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d at 359. (alterations and quotation omitted) (emphasis in original).

### 1.     Ohanian is estopped from alleging that T-Mobile knew about the iOS defect.

If a party "assumes a certain position in a legal proceeding, and succeeds in maintaining that position," that party is "judicially estopped from assuming a contrary position thereafter simply because his interests have changed." *Lia v. Saporito*, 541 F. App'x 71, 73 (2d Cir. 2013) (quotation omitted).  Judicial estoppel "is designed 'to preserve the sanctity of the oath by demanding absolute truth and consistency in all sworn positions,' and 'to protect judicial integrity by avoiding the risk of inconsistent results.'" *United States Fid. & Guar. Co. v. Petroleo Brasileiro S.A.*, 98 Civ. 3099 (JGK), 2001 U.S. Dist. LEXIS 3349, at *36 (S.D.N.Y. 2001).

In the original complaint, Plaintiffs alleged that the iOS defect was "known only to Apple." Dkt. 1 at ¶ 3.  Lopez successfully avoided dismissal of his GBL claim against Apple by arguing that the complaint sufficiently alleged that Apple – and Apple alone – was aware of the alleged defect.  *See* Dkts. 73 & 107.  Now that Lopez's claims have survived Apple's motion to dismiss, Plaintiffs have amended the complaint by omitting their prior allegation that the defect was "known only to Apple" and adding additional allegations they contend show that T-Mobile also knew about the alleged defect.  *See* Am. Compl. ¶¶ 3, 87-91.  In short, Plaintiffs relied on allegations of Apple's sole knowledge when beneficial to avoid dismissal of Lopez's claims but now disavow Apple's sole knowledge to avoid dismissal of Ohanian's claims against T-Mobile.

Preventing such gamesmanship is the very reason the judicial estoppel doctrine was created.[2] *United States Fid. & Guar. Co.*, 2001 U.S. Dist. LEXIS 3349, at *36.   Ohanian is judicially estopped from abandoning his position that only Apple (and necessarily not T-Mobile) had knowledge of the alleged defect; for this reason, his NY GBL claims fail and must be dismissed.

### 2. The Amended Complaint Does Not Allege T-Mobile's Knowledge of the Alleged Defect.

Even if the Court were to consider Ohanian's new, contradictory allegations, they fail to establish that T-Mobile knew about the alleged Apple defect.   Ohanian's entire case against T-Mobile is predicated on the assertion that, when selling SIM cards to provide consumers with T-Mobile cellular service, T-Mobile failed to disclose that unless the original user manually disassociated their telephone number from their Apple ID, upon later reassignment of the cellular phone number the new user's personal data could be compromised and their FaceTime and iMessage data could be misdirected to the original user.   *See* Am. Compl. ¶ 123 ("T-Mobile failed to inform consumers of the fact that its practice of selling SIM cards with recycled phone numbers, without requiring prior users to manually disassociate their Apple IDs from those phone numbers, led to unauthorized disclosures of consumers' data and confidential personal information."); ¶ 135 (same)   This allegation is wholly dependent on T-Mobile's knowledge of the existence of the alleged security flaw in Apple's iOS operating system that created the privacy risk about which Ohanian complains.

---

[2] Judicial estoppel applies to positions taken by the party to a litigation and those taken by someone in privity with him.  *See Lia*, 541 F. App'x at 73.  Here, Lopez and Ohanian are represented by the same counsel, filed a joint complaint and amended complaint, and are co-named plaintiffs to a putative class action.  They are undoubtably in privity.  *Cf. Cayuga Indian Nation v. Seneca Cty.*, 260 F. Supp. 3d 290, 303-04 (W.D.N.Y. 2017)  (noting that privity includes "those who are coparties" (quotation omitted)).

The Amended Complaint, however, does not include any factual allegations showing that T-Mobile knew about the defect.  In an attempt to establish T-Mobile's knowledge, Ohanian points to two things:  (i) an article by Ars Technica and (ii) a single post on an online forum on Apple's "Apple Community" internet forum.[3]  *See* Am. Compl. ¶ 88-92.  Neither of these two allegations – which do not involve the alleged defect at all – are sufficient to plausibly allege T-Mobile's knowledge of the alleged defect.

***The Ars Technica Article.***   The Ars Technica article does not mention T-Mobile at all.  Indeed, that article deals entirely with *Apple*, and expressly notes that Ars Technica contacted *Apple* about the problem described in the article (misdirection of communications in the context of stolen iPhones; a different problem than the one Ohanian complains about).  It is for that reason that the Court determined that Plaintiff Lopez had plausibly alleged that *Apple* had knowledge of the security flaw described in the article.  Dkt. 107 at 5-6.  By sharp contrast, there is nothing in the article to conclude that *T-Mobile* had knowledge of the article or the security problem the article describes.  Nor does the Amended Complaint contain a single factual allegation linking T-Mobile to the Ars Technica article, instead relying solely on the bare conclusory allegation that "T-Mobile was aware or should have been aware of the contemporaneous reporting," including the Ars Technica article.  Am. Compl. ¶ 88.  But Ohanian offers no facts to support the conclusion

---

[3]   The Court may consider the Ars Technica article and Apple Community post on this motion to dismiss because they are both incorporated by reference in the Amended Complaint.  *Mira v. Kingston*, 218 F. Supp. 3d 229, 234 (S.D.N.Y. 2016) (noting that the Court may consider documents "incorporated in the complaint by reference" and "may take judicial notice of any publicly available documents.").  A copy of the Apple Community post is attached as Exhibit A, and a copy of the Ars Technica is attached to the Declaration in Support of Apple's Motion to Dismiss [Dkt. 71-1].   The Court can also find the Apple Community post here: https://discussions.apple.com/thread/5692779; and the Court can find the Ars Technica article here:   https://arstechnica.com/gadgets/2011/12/stolen-iphone-your-imessages-may-still-be-going-to-the-wrong-place/.

that T-Mobile had or should have knowledge of this single, obscure article, nor does the Amended

Complaint identify any other "contemporaneous reporting" of which T-Mobile should have been

aware. [4]  This is precisely the type of "'naked assertion' devoid of 'further factual enhancement'"

that Federal Rule of Civil Procedure 8 prohibits, *See Iqbal,* 556 U.S. at 678, and cannot give rise

to an inference that T-Mobile was aware of the security flaw described in the Amended Complaint.

Moreover, to the extent Ohanian is suggesting that the Ars Technica article made the iOS

defect public knowledge—and thus somehow within T-Mobile's knowledge—Ohanian's NY

GBL claims must fail because an omission claim requires that T-Mobile alone possess the omitted

information *See Morales v. Kimberly-Clark Corp.*, No. 18-cv-7401 (NSR), 2020 U.S. Dist. LEXIS

93307, at *15 (S.D.N.Y. 2020) ("[T]he defendant *alone* must 'possess the material information

that is relevant to the consumer and fail to provide this information.'"  (alterations and quotation

omitted) (emphasis added)).  If a single article—that does not mention T-Mobile—is sufficient to

inform the public of the alleged defect, then T-Mobile did not possess exclusive knowledge of the

information it is charged with failing to disclose.

**The Apple Communities Forum.**  Similarly, there is nothing about Ohanian's reference to

the Apple Communities forum from which to conclude T-Mobile's knowledge of the defect

described.  The referenced post was made on ***Apple's forum, hosted on Apple's own website, not***

***T-Mobile's***.  *See* Ex. A (https://discussions.apple.com/thread/5692779).  Moreover, the post says

nothing at all about the security flaw described in the Amended Complaint, or anything like it.

Rather, the post is by a person who gave their old iPhone to his or her boyfriend, who then had

---

[4] The Amended Complaint makes passing reference to "Gizmodo articles described above," (Am. Compl. 89), but Gizmodo is not actually referenced anywhere else in the Amended Complaint.

trouble receiving iMessages.  It is worth reading the poster's actual issue, stripped of Ohanian's embellishment and speculation:

> He's on T-Mobile and everything seems to be working other than I am not able to send him iMessages, and it doesn't seem like he is able to receive iMessages from anyone else with a known iPhone either. The weird this is that he is able to SEND them and also facetime without issue. Just not receive them.

Ex. A at 1.  The post makes no mention of misdirected messages at all.  Instead, to fit a square peg in a round hole, Ohanian simply guesses that the poster's problem is caused by the alleged security flaw.  Am. Compl. 91 (speculating that poster's iMessages had "likely been misdirected to another iPhone user, similar to what Named Plaintiffs experienced.").  Such rank speculation is insufficient to survive a motion to dismiss under Rule 12(b)(6).  *Yamashita v. Scholastic Inc.*, 936 F.3d 98, 104 (2d Cir. 2019) ("To survive a Rule 12(b)(6) challenge, the complaint's factual allegations must be enough to raise a right to relief above the speculative level."  (alterations, internal quotation marks, and quotations omitted)).

Nor does the post suggest – contrary to Ohanian's baseless assertion to the contrary – that T-Mobile was aware of any security flaw.  The Amended Complaint alleges that "T-Mobile was aware of the issue" because the poster's SIM card had been updated by T-Mobile.  Am. Compl. ¶ 92.  Again, the text of the post itself belies Ohanian's characterization.  The author of the post states that she had the SIM card updated "when we did the swap," – in other words, when the poster first gave the iPhone to his or her boyfriend – ***not*** after he began experiencing issues receiving iMessages.  *See* Ex. A at 1.  Nowhere does the post suggest that T-Mobile was made aware of the poster's problem – let alone Ohanian's – after it occurred.  Nonetheless, Ohanian relies exclusively on the Apple Communities post for his allegation that "T-Mobile received complaints from its own customers concerning these very issues."  *See* Am. Compl. ¶¶ 89.  Again,

10

baseless speculation – unsupported by the actual evidence to which it cites – cannot form a basis for inferring T-Mobile's knowledge.

Finally, Ohanian alleges that "according to the post, at least twenty-one (21) other consumers reported that they had the very same question." Am. Compl. 92. Ohanian draws this conclusion from the fact that some number of other unknown individuals clicked a button on the forum labeled "I have this problem too." *See* Ex. A at 1. Of course, there is no indication as to who clicked the button, when they clicked the button, or if the same person clicked the button on multiple occasions. Notably, the forum post does not include any replies from consumers expressing similar concerns.

There is simply no basis to suggest that T-Mobile knowingly failed to disclose anything, and Ohanian's NY GBL claims should therefore be dismissed. *Cf. In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d at 359; *Cummings*, 401 F. Supp. 3d at 309.

## B.     Reassigning Abandoned Phone Numbers is Explicitly Required by Federal Regulations and Cannot Form the Basis of a NY GBL Claim.

To the extent Ohanian suggests that he was injured by T-Mobile's "practice of selling SIM cards with recycled phone numbers" (Am. Compl. ¶¶ 122-23, 134-35), his NY GBL claim is barred by the plain language of the statute. Section 349 provides that it is "***a complete defense***" if the complained of action is "subject to and complies with the rules and regulations of, . . . any official department, division, commission or agency of the United States." N.Y. G.B.L. § 349(d) (emphasis added). Similarly, Section 350 provides that it is "***a complete defense***" if the allegedly violative advertisement "is subject to and complies with the rules and regulations of, and the statutes administered by the Federal Trade Commission or any official department, division,

commission or agency of the state of New York." N.Y. G.B.L. § 350-d (emphasis added)).[5] Indeed, courts routinely dismiss GBL §349 and §350 claims when the conduct at issue complies with federal regulations. *See, e.g.*, *Marcus*, 938 F. Supp. at 1173 (dismissing Section 349 and 350 claims because defendant's billing practices complied with FCC regulations); *Samuel v. Time Warner, Inc.*, 2005 NY Slip Op 25451, ¶ 9 (Sup. Ct.) (dismissing Section 349 claims based on defendant's conduct that was found to be "in compliance with FCC regulations").[6]

Ohanian's §349 and §350 claims are barred because the alleged conduct at issue— recycling abandoned telephone numbers[7]—is subject to and complies with rules and regulations established by the FCC. The FCC's "rules require providers to ensure the efficient use of telephone numbers by reassigning a telephone number to a new consumer after it is disconnected by the previous consumer." *In re Advanced Methods to Target & Eliminate Unlawful Robocalls*, 33 FCC Rcd 12024, 12027, 2018 FCC LEXIS 3442, *7 (F.C.C. December 13, 2018) (citing 47 C.F.R. § 52.15). In fact, the FCC **requires** wireless carriers to make a telephone number available for

---

[5]   "Although § 350-c [—now § 350-d—] refers only to regulations administered by the Federal Trade Commission ('FTC'), the New York courts have construed that statute to cover regulations by other federal agencies as well." *Am. Home Prods. Corp. v. Johnson & Johnson*, 672 F. Supp. 135, 144 (S.D.N.Y. 1987). This includes rules and regulations promulgated by the FCC. *See Marcus*, 938 F. Supp. at 1173 ("Courts have construed §350-d to be congruent with § 349(d) and also to cover regulations promulgated by federal agencies other than the FTC.").

[6]   *See also Colella v. Atkins Nutritionals, Inc.,* 348 F. Supp. 3d 120, 134 n.6 (E.D.N.Y. 2018) (dismissing claims under Section 349 and 350 because label complied with FDA regulations); *Wurtzburger v. Ky. Fried Chicken*, No. 16-cv-08186 (NSR), 2017 U.S. Dist. LEXIS 205881, at *11 (S.D.N.Y. 2017) (dismissing Section 349 claim because plaintiff failed to allege defendant's slack-filling practice violated FDA regulations); *Diaz v. Paragon Motors of Woodside, Inc.,* 424 F. Supp. 2d 519, 542 (E.D.N.Y. 2006) (dismissing Section 349 claim because conduct complied with Equal Credit Opportunity Act).

[77]   In the Amended Complaint, Ohanian changed "recycling phone numbers" to "selling SIM cards with recycled phone numbers." *Compare* Dkt. 1 at ¶ 4, *with* Am. Comp. ¶ 4. This change is a distinction without a difference since phone numbers are reassigned/recycled by associating them to new SIM cards that are sold to other customers.

assignment to a new user within 90 days from the time it is disconnected from the original user. *Id.* at \*14; 47 C.F.R. § 52.15(f)(1)(ii); *see also In re Telephone Number Portability; Numbering Resource Optimization*, 35 FCC Rcd 10432, 10432, 2020 FCC LEXIS 3625, \*1 ("[S]ervice providers may only age telephone numbers that have been disconnected for up to 90 days before assigning them to other customers.").

Because the FCC requires wireless carriers to reassign disconnected numbers, T-Mobile has a "complete defense" to Ohanian's NY GBL claims; those claims should be dismissed. *Marcus*, 938 F. Supp. at 1173; *Samuel*, 2005 NY Slip Op 25451, ¶ 9.

### C.   Ohanian Does Not Allege the Existence of any Advertisement that Could Support a Claim Under NY GBL § 350.

Ohanian's NY GBL § 350 claim should also be dismissed because the Amended Complaint does not mention – generally or specifically – a single T-Mobile advertisement that he alleges was false or misleading.  NY GBL § 350 concerns "[f]alse advertising in the conduct of any business." N.Y. G.B.L. § 350.  Thus, to state a claim for a violation of GBL § 350, a plaintiff must allege that "advertising was 'misleading in a material respect.'" *Anunziatta v. Orkin Exterminating Co., Inc.*, 180 F. Supp. 2d 353, 362 (N.D.N.Y. 2001).  "It is axiomatic that 'without advertisements related to the issue at hand Plaintiffs have failed to state a claim for false advertising under Gen. Bus. L. § 350.'" *Canestaro v. Raymour & Flanigan Furniture Co.*, 42 Misc. 3d 1210(A), 1210A, 984 N.Y.S.2d 630, 630 (Sup. Ct. Erie Cnty. 2013) (quoting *Anunziatta*, 180 F. Supp. 2d at 362-63).

While this Court held that the original complaint identified a series of *Apple* advertisements that could be actionable (*see* Opinion and Order at 5 [Dkt. 107]), there is not a single *T-Mobile* advertisement identified or described anywhere in the Amended Complaint.  Ohanian instead references "T-Mobile's false advertising" without providing any information about what was advertised, where any advertisements were made, or the content of any advertisements.  *See* Am.

13

Compl. ¶¶ 137-38.  The Court, of course, should not consider such "legal conclusions couched as factual allegations." *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 U.S. Dist. LEXIS 9714, at *6 (S.D.N.Y. 2021) (quoting *Stadnick v. Lima*, 861 F.3d 31, 35 (2d Cir. 2017)); *see also Anunziatta*, 180 F. Supp. 2d at 362-63.  Without identifying an advertisement, Ohanian simply cannot state a claim for false *advertising* under NY GBL § 350, and his claim should be dismissed.

### D.    Ohanian Does Not Allege he was Actually Injured by T-Mobile's Alleged Conduct.

Ohanian does not allege that he was personally injured in any way as a result of T-Mobile's conduct.  "[T]o sustain a claim under GBL §§ 349 and 350, Ohanian must prove that Defendants' deceptive act caused some actual injury." *Eidelman v. Sun Prods. Corp.*, No. 16-cv-3914 (NSR), 2021 U.S. Dist. LEXIS 60976, at *7 (S.D.N.Y. Mar. 30, 2021).  "It is well established, however, that the claimed deception cannot itself be the only injury." *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 415 (S.D.N.Y. 2004).  Thus, "a plaintiff's allegation that he or she bought a product that he or she 'would not have purchased, absent a manufacturer's deceptive commercial practices' is insufficient to establish a cognizable injury under NY GBL §§ 349 and 350." *Zottola v. Eisai Inc.*, No. 20-CV-02600 (PMH), 2021 U.S. Dist. LEXIS 187098, at *7-9 (S.D.N.Y. 2021).

Here, Ohanian alleges that he suffered an injury because he: (i) was the victim of  privacy violations; (ii) paid a premium for a SIM card that did not provide a secure means to communicate; (iii) bought a SIM card that was less valuable because it did not provide him with a secure means to communicate; and (iv) suffered emotional distress.  Am. Compl. ¶¶ 125, 138.  Each of these alleged harms is insufficient to sustain Ohanian's NY GBL claims as a matter of law.

As an initial matter, it is apparent that each of the first three of these alleged injuries was allegedly suffered by Plaintiff Lopez (who has dismissed all of his claims against T-Mobile), *not* Ohanian.  For example, the Amended Complaint alleges that Plaintiff Lopez was the victim of

privacy violations because his iMessage and FaceTime communications were misdirected.  Am. Compl. ¶¶ 71, 77.  By contrast, there is no allegation that Ohanian's communications were ever compromised or that his privacy was "violated" in any way.  Similarly, the Amended Complaint alleges that "Ohanian and members of the class" paid premium prices to purchase T-Mobile SIM cards and that they were deprived of the benefit of the bargain because the cards "did not provide them with a private and secure means to communicate."  Am Compl. ¶ 125.  Again, unlike Plaintiff Lopez, however, Ohanian does not allege that his data or confidential information was compromised or accessed by anyone without authorization.  Indeed, there is no allegation to suggest that *as to him* the SIM card that he purchased and used was anything but secure.  As such, Ohanian received exactly what he paid for; as to himself, personally, he cannot allege a cognizable harm arising from his purchase.  *See Bildstein*, 329 F. Supp. 2d at 416 ("The Amended Complaint is bereft of any allegation that MasterCard failed to deliver the service Bildstein paid for.").

Ohanian is thus left with his assertion that he "suffered significant and irreparable emotional distress, anxiety, humiliation, and annoyance."  (Am. Compl. ¶ 125).  Ohanian's sole allegation supporting this alleged claim of injury is that he "suffered significant and irreparable emotional and marital distress" because he received content and pictures on his iPhone "which clearly appeared to be coming from a woman."  Am. Compl. ¶ 76.  But such claims of emotional distress, lacking any allegation of actual, quantifiable injury, have been regularly rejected as a basis for a NY GBL claim.  *See Lane v. Fein, Such & Crane, LLP*, 767 F. Supp. 2d 382, 391 (E.D.N.Y. 2011) ("As for damages, the plaintiffs have alleged no facts—aside from their conclusion that they suffered emotional distress—that show that the alleged acts of the defendant caused any quantifiable damage."); *Roth v. CitiMortgage, Inc.*, 2013 U.S. Dist. LEXIS 131861,

at \*37 (E.D.N.Y. 2013) (dismissing GBL § 349 claim because plaintiff's allegations of emotional distress were "insufficient to state a claim that plaintiff was injured by defendant's conduct.").

## II.    OHANIAN'S FRAUDULENT MISREPRESENTATION CLAIM FAILS AS A MATTER OF LAW.

As with Plaintiff Lopez's fraudulent misrepresentation claim against Apple, Ohanian's fraudulent misrepresentation claim should be dismissed.  *See* Opinion and Order at 7 [Dkt. 107]. *First,* Ohanian fails to plead his fraudulent misrepresentation claim with the particularity required by Federal Rule of Civil Procedure Rule 9(b).  *Second,* as with Ohanian's NY GBL claims, there are no facts to suggest T-Mobile was aware of the alleged defect in Apple's iOS operating system such that it could have disclosed the existence of the defect to Ohanian.  *Third,* Ohanian's claim is based solely on alleged omissions, but he does not allege any facts demonstrating that T-Mobile had a duty to disclose the allegedly omitted information.  *Fourth*, Ohanian does not allege that his privacy or confidential personal information was compromised, and thus, he was not injured as a result of the alleged omissions.

### A.    The Amended Complaint Does Not Plead Fraud with Particularity as Required by Fed. R. Civ. P. 9(b).

Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  Because, as to T-Mobile, Ohanian alleges only fraudulent omissions, Rule 9(b) requires Ohanian to "allege: (1) what the omissions were; (2) the person responsible for the failure to disclose: (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud."  *Craig v. Bank of N.Y. Mellon Corp.*, No. 10-CV-4438 (SLT) (RML), 2012 U.S. Dist. LEXIS 40286, at \*20-21 (E.D.N.Y. Mar. 23, 2012) (quotation omitted).  Ohanian must also plead "facts 'that give rise to a strong inference of fraudulent intent.'"  *Quiroz v. Beaverton Foods, Inc.*, No. 17-CV-7348 (NGG) (JO), 2019 U.S. Dist. LEXIS 57313, at \*6 (E.D.N.Y. Mar. 31, 2019) (quotation omitted).

Ohanian's allegations of fraud contain none of this required particularity.  The Amended Complaint does not identify a single statement—by substance or date—rendered false and misleading as a result of T-Mobile's alleged omission.  Indeed, Ohanian provides no details regarding the alleged omissions at all.  For example, rather than allege when the alleged omissions happened, Ohanian alleges only that they happened "[a]t all times relevant."  *See* Am. Compl. ¶ 146; Opinion and Order at 7 [Dkt. 107] ("The Complaint's allegations of fraud do not satisfy Rule 9(b) because the Complaint does not specify when and where the allegedly fraudulent [omissions] were made.").  Nor does the Ohanian allege any facts regarding the person responsible for the failure to disclose, how Ohanian relied on the omissions, what T-Mobile obtained by not disclosing, or any facts that could give rise to a strong inference of fraudulent intent.  As this Court held in connection with Apple's motion to dismiss Lopez's claims, "[t]hese vague allegations are insufficient to meet Rule 9(b)'s pleading requirements."  Opinion and Order at 7 [Dkt. 107] (citing *Womack v. Capital Stack, LLC,* No. 18 Civ. 4192, 2019 WL 2277835, at *8 (E.D.N.Y. May 18, 2018)).  The same is true here; Ohanian's fraudulent misrepresentation claim should be dismissed.

### B.      T-Mobile is Not Alleged to Have Been Aware of the iOS Defect.

As addressed above, the Amended Complaint contains no factual allegations to support the inference that T-Mobile was aware of the alleged security flaw in Apple's iOS operating system that forms the basis for Ohanian's claim.  *See supra*, Section I.A.  T-Mobile cannot be liable for failing to disclose facts that it is not alleged to have known.  *Cf. Sedona Corp. v. Ladenburg Thalmann & Co.*, 2011 U.S. Dist. LEXIS 105320, at *14 (S.D.N.Y. 2011) (dismissing fraudulent concealment claim when plaintiff failed to allege facts demonstrating how defendants knew about allegedly concealed information); *Kampuries v. Am. Honda Motor Co.*, 204 F. Supp. 3d 484, 493 (E.D.N.Y. 2016) (dismissing fraudulent concealment claim because plaintiff did not allege "factual allegations to support his claim that defendants were aware" of the allegedly omitted facts).

C.   **T-Mobile Did Not Have a Duty to Disclose the Alleged iOS Defect.**

Even if T-Mobile were alleged to have had knowledge of Apple's alleged security flaw (and the Amended Complaint contains no such allegation), failure to disclose that information cannot give rise to a fraud claim unless the "defendant had a duty to disclose material information." *First Hill Partners, LLC v. Bluecrest Capital Mgmt.*, 52 F. Supp. 3d 625, 637 (S.D.N.Y. 2014) (quotation omitted).  Because Ohanian does not allege that T-Mobile had a duty to disclose the alleged iOS defect, his fraudulent misrepresentation claim fails.

Under New York law, a duty to disclose arises only where: (1) "a fiduciary relationship exists; (2) "one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge;" or (3) "a party has made a partial or ambiguous statement, whose full meaning will only be made clear after complete disclosure." *Id.* (quotation omitted)).  Ohanian does not allege that any of these situations apply.

First, Ohanian does not, and indeed cannot, allege the existence of a fiduciary relationship between T-Mobile and Ohanian. The extent of the relationship between Ohanian and T-Mobile is that Ohanian purchased a SIM card from T-Mobile.  *See* Am. Compl. ¶ 54. But "[t]here is no fiduciary relationship where a purely commercial or business relationship exists." *Burian v. Kurtz*, No. 85 Civ. 9223 (KTD), 1990 U.S. Dist. LEXIS 6411, at *18 (S.D.N.Y. 1990); *see also Schwartz v. Michaels*, 91 Civ. 3538 (RPP), 1992 U.S. Dist. LEXIS 11321, at *89 (S.D.N.Y. 1992) (dismissing fraudulent concealment claim because "[n]o fiduciary relationship . . . is alleged").

Second, as discussed above, Ohanian does not allege T-Mobile possessed any knowledge about the alleged iOS security flaw, and he is estopped from arguing otherwise.  Thus, T-Mobile could not have "superior knowledge" giving rise to a duty to disclose.

Third, Ohanian does not allege that T-Mobile made any partial or ambiguous statements. In fact, Ohanian does not allege the existence of any statements made by T-Mobile at all.  Because

18

Ohanian has not alleged facts that would impose a duty on T-Mobile to disclose the alleged iOS defect (a defect of which T-Mobile was unaware), Ohanian's fraudulent omission claim fails and should be dismissed.  *See First Hill Partners*, 52 F. Supp. 3d at 639 (dismissing fraud claim for failure "to plead the existence of a duty to disclose").

      **D.**      <u>**Ohanian Does Not Allege an Actionable Injury.**</u>

      Like his NY GBL claims, to assert a claim for fraud, Ohanian is required to allege that he was injured by T-Mobile's deceptive conduct.  *See Everlast World's Boxing Headquarters Corp. v. Trident Brands Inc.*, No. 19-CV-503 (JMF), 2020 U.S. Dist. LEXIS 33266, at *19 (S.D.N.Y. Feb. 26, 2020) (holding that injury is an "essential element[]" of fraud).  Yet, as discussed above, Ohanian does not allege that any of his confidential or private information was ever compromised. *Shafran v. Harley-Davidson*, 2008 U.S. Dist. LEXIS 22494, at *7 (S.D.N.Y. 2008); *Olinsky & Assocs., PLLC v. Nutting*, No. 5:20-CV-01142 (MAD/ATB), 2021 U.S. Dist. LEXIS 124704, at *19-20 (N.D.N.Y. 2021).  Similarly, while Ohanian alleges that he paid a premium for his SIM card and that it was less valuable, his only basis for asserting that he overpaid was that the SIM card "did not provide [him] with a private and secure means to communicate."  Am. Compl. ¶ 149. Again, Ohanian does not allege that his confidential information was compromised or that the SIM card did not provide a private and secure means of communication.  *See Belcastro v. Burberry Ltd.*, No. 16-CV-1080 (VEC), 2017 U.S. Dist. LEXIS 26296, at *9 (S.D.N.Y. 2017) (holding that there must "be a connection between the defendant's deception and an objective injury, either in terms of price or product").

      Finally, Ohanian's alleged emotional distress cannot constitute an actionable injury because "recovery for fraudulent misrepresentation is limited to actual pecuniary losses," not non-pecuniary harm, such as emotional distress.  *See Sheahan v. CBS Inc.*, No. 92 Civ. 6197 (SS), 1994

U.S. Dist. LEXIS 2623, at *34-35 (S.D.N.Y. Mar. 8, 1994).  Ohanian fails to allege an injury that could support a fraud claim, and his misrepresentation claim fails for this additional reason.

## III.   OHANIAN'S UNJUST ENRICHMENT CLAIM FAILS AS A MATTER OF LAW.

Like his other claims, Ohanian's unjust enrichment claim should be dismissed.  As this Court already recognized in its order granting in part Apple's Motion to Dismiss Lopez's claims, Ohanian's unjust enrichment claim is entirely and impermissibly duplicative of Ohanian's other claims.  Moreover, because Ohanian's unjust enrichment claim is grounded in fraud, it is subject to Rule 9(b)'s heightened pleading requirements, yet the Amended Complaint falls far short of pleading this claim with particularity.

### A.   Ohanian's Unjust Enrichment Claim is Duplicative of His Other Claims.

Unjust enrichment is not "a catchall cause of action to be used when others fail." *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 511-12 (S.D.N.Y. 2018) (quotation omitted). Accordingly, as this Court previously held, an unjust enrichment claim must be dismissed when "it is entirely duplicative of the other claims in the Complaint."  Opinion and Order at 8 [Dkt. 107]. For this reason, courts regularly dismiss unjust enrichment claims when they are based on the same allegations as other claims.  *See, e.g.*, *id.* at 8 (denying Plaintiff Lopez's unjust enrichment claim because the "allegations duplicate the other claims."); *Green v. Covidien LP*, 2019 U.S. Dist. LEXIS 148514, at *24 (S.D.N.Y. 2019); *Innovative Custom Brands, Inc. v. Minor*, No. 15-CV-2955 (AJN), 2016 U.S. Dist. LEXIS 8354, at *10-11 (S.D.N.Y. 2016).

Here, Ohanian alleges that T-Mobile was unjustly enriched by selling Ohanian a SIM card without disclosing its practice of recycling abandoned phone numbers and that, in light of the flaw in Apple's iOS operating system, his privacy and confidential information may not be protected. *See* Am. Compl. ¶¶ 153-56.  These are the same allegations Ohanian pleads to support his NY GBL and fraud claims.  *See id*. ¶¶ 118-150.  For this exact reason, this Court dismissed Lopez's

20

unjust enrichment claim asserted against Apple.  Opinion and Order at 8 [Dkt. 107] ("[T]he unjust enrichment claim is dismissed because it is entirely duplicative of the other claims in the Complaint.").  The same result is called for here.  Because Ohanian relies on "precisely the same allegations which supported the fraud claim," the "claim for unjust enrichment duplicates the claim for fraud . . . [and] must be dismissed under New York law."  *Coppelson v. Serhant*, No. 19-cv-8481 (LJL), 2021 U.S. Dist. LEXIS 120125, at *12-13 (S.D.N.Y. 2021).

### B.   **The Amended Complaint Does Not Plead Unjust Enrichment with the Particularity Required by Fed. R. Civ. P. 9(b).**

Under New York law, an unjust enrichment claim requires a plaintiff to allege "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (quotation omitted).  When an unjust enrichment claim "involves averments of fraud," it is subject to Rule 9(b)'s particularity requirement.  *In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13-MD-2450 (KMK), 2015 U.S. Dist. LEXIS 155383, at *52 (S.D.N.Y. 2015) (collecting cases).  Here, Ohanian alleges T-Mobile was unjustly enriched by failing to disclose its practice of recycling abandoned numbers and that, in light of the flaw in Apple's iOS operating system, their privacy and confidential information may not be protected.  *See* Am. Compl. ¶¶ 153-56.  Ohanian's unjust enrichment claim is therefore "premised on fraudulent conduct" and "subjected to the higher pleading standard of Rule 9(b)."  *Welch v. TD Ameritrade Holding Corp.*, 2009 U.S. Dist. LEXIS 65584, at *67 (S.D.N.Y. 2009) (alterations and quotation omitted).  The Amended Complaint's allegations fall far short of this particularity requirement.

As an initial matter, because Ohanian's fraud claim fails as a matter of law (*see supra*, Section II.A), and Ohanian's unjust enrichment claim is based on the same alleged conduct, Ohanian's unjust enrichment claim also fails.  *See Innovative Custom Brands, Inc.*, 2016 U.S. Dist.

LEXIS 8354, at *10-11 ("Plaintiff does not allege with any specificity the 'particulars' of the challenged transactions . . . As a result, Plaintiff fails to meet the Rule 9(b) requirements for an unjust enrichment claim premised on fraud and that claim must be dismissed."); *Demirovic v. Ortega*, No. 15 CV 327 (CLP), 2017 U.S. Dist. LEXIS 230230, at *10-11 (E.D.N.Y. 2017) (dismissing unjust enrichment claim as "similarly deficient in failing to plead the claim of an underlying fraudulent scheme with particularity"); *Thakoopersaud v. Nat'l City Bank*, No. 12-CV-3096 (CBA) (VMS), 2013 U.S. Dist. LEXIS 208280, at *19-20 (E.D.N.Y. 2013) (same).

Furthermore, to state an unjust enrichment claim, Ohanian must allege T-Mobile received a benefit that is "both 'specific' and 'direct.'" *Regnante v. Sec. & Exch. Officials*, 134 F. Supp. 3d 749, 772 (S.D.N.Y. 2015). Here, Ohanian merely alleges that at some undefined point in time, T-Mobile was "conferred significant financial benefits and paid substantial sums of money." Am. Compl. ¶ 154. Ohanian does not, however, allege when T-Mobile received this nebulous benefit or what sum of money was received. *See id.* Thus, Ohanian fails to allege facts sufficient to establish the first element of his claim. *See Innovative Custom Brands, Inc.*, 2016 U.S. Dist. LEXIS 8354, at *11 (dismissing unjust enrichment claim for failing to allege "the amount of funds that the Defendants received or the dates of the transfers").

## IV.   OHANIAN'S GBL AND UNJUST ENRICHMENT CLAIMS ARE TIME-BARRED.

In addition to the reasons articulated above, Ohanian's NY GBL and unjust enrichment claims arising from his purchase of a T-Mobile SIM card are barred by the applicable statutes of limitations. The statute of limitations for claims under NY GBL §§ 349 and 350 and for unjust enrichment is three years. *See Williams v. Dow Chem. Co.*, No. 01-Civ.-4307, 2004 U.S. Dist. LEXIS 10940, at *20-21 (S.D.N.Y. 2004) (citing NY CLS CPLR § 214(2)); *Cohen v. Dunne*, 2017 U.S. Dist. LEXIS 160165, at *9 (S.D.N.Y. 2017). To the extent a plaintiff claims that he overpaid

for a product or service as a result of deceptive conduct, the statute begins to run at the time of purchase.  *See Tomassini v. FCA US LLC*, No. 3:14-CV-1226 (MAD/ML), 2020 U.S. Dist. LEXIS 70683, at *25 (N.D.N.Y. 2020) ("[C]laim accrued as of the date of the purchase."); *Bristol Vill., Inc. v. Louisiana-Pacific Corp.*, 170 F. Supp. 3d 488, 497 (W.D.N.Y. 2016) (same); *Gould v. Helen of Troy, Ltd*., 2017 U.S. Dist. LEXIS 54611, at *5-6 (S.D.N.Y. 2017) ("[C]laims accrue[ed] when she made the purchase in 2012, not when she was physically injured in 2015.").

As noted above, Ohanian alleges that he was injured because in connection with his purchase of a T-Mobile SIM card and cellular service he "paid premium prices" and "was deprived of the benefit of the bargain."  *See* Am. Compl. ¶¶ 125, 138.  Ohanian purchased the SIM card from T-Mobile on April 19, 2016.  *See* [Proposed] Joint Pretrial Order at 7 [Dkt. 96] ("On April 19, 2016, Ohanian visited a T-Mobile store located at 1180 6th Ave., New York, NY 10036-8401. . . .  During this April 19, 2016, visit, Ohanian purchased a T-Mobile prepaid line of service for a mobile number ending in 9539, and he purchased a SIM Starter Kit.").[8]  Thus, as to Ohanian's purchase-based claims, the statute of limitations expired on April 19, 2019—or over a year before filing this lawsuit.  *See Tomassini*, 2020 U.S. Dist. LEXIS at *25 (dismissing as time-barred where plaintiff allegedly paid more for vehicle than would have if defect was known).

Aware that the statute of limitations has expired, Ohanian amended his Complaint to allege he could not have discovered the alleged defect sooner and that he suffered "a continuing wrong."  *See* Am. Compl. ¶ 78-80.  Ohanian presumably added these allegations in an attempt to trigger the

---

[8]   Ohanian's statement in the Joint Pretrial Order is a judicial admission "that bind[s] both the party making the admission and the court."  *AmTrust N. Am., Inc. v. Safebuilt Ins. Servs.*, No. 16-cv-6033 (CM), 2016 U.S. Dist. LEXIS 153399, at *9 (S.D.N.Y. 2016).  The Court may consider judicial admissions in resolving a motion to dismiss.  *See Scott v. City of White Plains*, 2012 U.S. Dist. LEXIS 53212, at *24-25 n.7 (S.D.N.Y. 2012) ("The Court may consider admissions contained in Mr. Scott's briefs (and the exhibits thereto) on a motion to dismiss.").

23

discovery rule and continuing wrong doctrine.  Neither doctrine can save his claims.  The discovery rule does not even apply to unjust enrichment or NY GBL claims.  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2015 U.S. Dist. LEXIS 149629, at *101 (S.D.N.Y. Nov. 3, 2015) ("New York does not apply a discovery rule to unjust enrichment."); *Gould*, 2017 U.S. Dist. LEXIS 54611, at *4 ("Accrual of GBL §§ 349 and 350 claims are not dependent upon any date when discovery of the alleged deceptive practice is said to occur.").

The continuing harm doctrine is equally inapplicable because it "may only be predicated on continuing unlawful *acts* and not on the continuing *effects* of earlier unlawful conduct." *DuBuisson v. Nat'l Union Fire Ins. of Pittsburgh, P.A.*, 2021 U.S. Dist. LEXIS 138918, at *19 (S.D.N.Y. 2021) (emphasis added).  The doctrine does not apply when a defendant's alleged wrongful act is a false statement or advertisement at the time of a purchase even if the plaintiff continues to feel the effects afterwards.  *See id.* at *22 ("Plaintiffs contend that they suffered harm as a result of false and misleading advertising that induced them to purchase the insurance policies in the first place.  The monthly premiums are merely 'continuing effects of earlier unlawful conduct.'" (quotation omitted)).  Here, Ohanian's claims are based on alleged omissions related to the April 2016 purchase of a SIM card.  *See* Am. Compl. ¶¶ 54, 123, 135, 153-54.  Ohanian does not allege that T-Mobile committed any additional unlawful acts after the date of purchase. The continuing wrong doctrine is thus inapplicable and cannot save Ohanian's claims.  *See City of Almaty v. Ablyazov*, No. 15-CV-5345 (AJN), 2018 U.S. Dist. LEXIS 50782, at *14 n.4 (S.D.N.Y. 2018) ("This doctrine is applied narrowly in this Circuit, and as a general rule, courts in the Second Circuit have viewed continuing violation arguments with disfavor." (alterations omitted)).[9]

---

[9] Notably, even if Ohanian's claim accrued when he began receiving Lopez's iMessages rather than the date of purchase, his claims would still be time-barred. Lopez began using Ohanian's

## V.   NY GBL SECTIONS 349 AND 350 DO NOT APPLY TO TRANSACTIONS THAT OCCURRED OUTSIDE OF NEW YORK.

"NY GBL sections 349 and 350 are limited to transactions that take place in New York." Opinion and Order at 6 [Dkt. 107] (citing *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E. 2d 1190, 1195-96 (N.Y. 2002)).  Ohanian asserts NY GBL claims on behalf of a nationwide putative class of "individual consumers who (i) purchased one or more iPhones, or purchased on or more T-Mobile SIM cards for use in iPhones during the Class Period; and (ii) utilized the iMessage and/or FaceTime features of the iPhones through the SIM cards during the Class period."  Am. Compl. ¶ 17.  Ohanian does not limit the scope of the putative class to consumers who purchased T-Mobile SIM cards in New York.  Accordingly, to the extent Ohanian's and putative class members' claims under NY GBL §§ 349 and 350 are based on transactions that took place outside of New York, those claims must be dismissed.  *See* Opinion and Order at 6 [Dkt. 107].

## CONCLUSION

For all the reasons stated herein, the Court should dismiss with prejudice Ohanian's claims asserted against T-Mobile.  Because Ohanian has already had an opportunity to amend the complaint and has failed to cure the deficiencies highlighted in T-Mobile's original motion to dismiss, dismissal should be with prejudice, and Ohanian should not be granted another opportunity to fix the incurable defects in his claims.  *See ATSI Communs., Inc. v. Shaar Fund, Ltd.*, 357 F. Supp. 2d 712, 720 (S.D.N.Y. 2005) ("As plaintiff has already had an opportunity to amend, dismissal is with prejudice.").

---

former number in January 2017. See Opinion & Order [Dkt. 52] at 1.  Ohanian knew or was aware of the alleged defect at that time, but he did not file his Complaint until more than three years later. Accordingly, Ohanian's GBL and unjust enrichment claims should be dismissed.

Dated: January 31, 2022

Respectfully submitted,

*/s/ Brett D. Jaffe*
Brett D. Jaffe
**ALSTON & BIRD LLP**
90 Park Avenue
New York, New York 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
Email: brett.jaffe@alston.com

Kristine M. Brown (*Pro Hac Vice*)
Derin B. Dickerson (*Pro Hac Vice*)
**ALSTON & BIRD LLP**
1201 W Peachtree Street, Suite 4900
Atlanta GA 30309
(404) 881-7000 – Telephone
(404) 881-7777 – Facsimile
kristy.brown@alston.com
derin.dickerson@alston.com

Nathaniel R. Lee (*Pro Hac Vice*)
**ALSTON & BIRD LLP**
Chase Tower
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
(214) 922-3400 – Telephone
(214) 922-3899 – Facsimile
nathan.lee@alston.com

**ATTORNEYS FOR DEFENDANT**
**T-MOBILE USA, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 31, 2022, I caused to be served a copy of the foregoing Memorandum of Law in Support of T-Mobile USA, Inc.'s Motion to Dismiss Amended Complaint, via the Court's ECF system on all counsel of record registered through that system to receive electronic filings in this case.

Respectfully submitted,

*/s/ Brett D. Jaffe*
Brett D. Jaffe
**ALSTON & BIRD LLP**
90 Park Avenue
New York, New York 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
Email: brett.jaffe@alston.com